## MacGREAL *v.* TAYLOR.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 75. Argued October 28, 1896. — Decided May 24, 1897.

An infant female was the owner of an unimproved lot in the city of Washington upon which there were valid liens for unpaid purchase money and taxes. In order that those liens might be discharged and the property improved, she borrowed $8000, and executed a deed of trust upon the lot to secure the loan. Part of the money so borrowed was used to pay off prior liens and taxes, and the balance was applied by her, or under her directions, in improving the lot. Upon arriving at majority, she disaffirmed her contract and deed of trust, and refused to pay the money

borrowed by her. At the time the deed of trust was executed, no inquiries were made as to her age, nor did she make any representations in regard to it. *Held*,

(1) An infant's deed is voidable only, unless it appears upon its face to be to his prejudice, in which case it may be deemed void; and the infant is not estopped by his acts or declarations, or by his silence, during infancy, from asserting, on arriving at full age or within a reasonable time thereafter, the invalidity of such deed;

(2) If the money borrowed by the infant had been expended by her otherwise than in the improvement of her lot, the lender would have been without remedy; for it is not a condition of the disaffirmance by an infant of a contract made during infancy that the consideration received be returned, if, prior to such disaffirmance and during infancy, the specific thing received has been disposed of, wasted or consumed and cannot be returned;

(3) Upon the disaffirmance by an infant of his contract, the contract is annulled on both sides, and the parties revert to the same situation as if the contract had not been made;

(4) In this case, the infant having disaffirmed her deed, she is not entitled, as between herself and the lender, to be protected except in the enjoyment of such rights in the property in question as she had at the time the deed of trust was executed; and the money borrowed by her having gone into the property which she holds in its improved condition, it is to be deemed to be in her hands within the meaning of the rule which entitles the other party to recover such of the consideration as remains in the infant's hands at the time of disaffirmance. She is not entitled to make profit out of those whose money has been used, at her request, in protecting and improving her estate; but as the disaffirmance of her deed restores her rights in the property, a sale ought not to have the effect of depriving her altogether of the interest she had at the time the deed of trust was executed;

(5) The decree of sale in the present case was proper, but it was error to give to the lender a preference in the distribution of the proceeds for the *entire* debt secured by the deed of trust, without reference to the amount for which the property in its improved condition might sell. The decree should direct the proceeds to be applied, first, in repaying to the lender, with interest, the sums paid in discharge of the prior liens and taxes; second, in paying to the infant an amount equal to the value of the lot at the institution of the suit (less such prior liens and taxes) without interest on that amount, and without taking into consideration the value of the improvements placed on the lot; and, third, in paying to the appellees such of the proceeds of sale as may remain, not exceeding the balance due on the loan, with interest. This last sum would represent, so far as may be, the value of the improvements put upon the lot with the money borrowed. Any other decree will

make the disaffirmance by the infant ineffectual, if the property, upon being sold, does not bring more than the debt attempted to be secured to the lender.

THE case is stated in the opinion.

*Mr. Henry E. Davis* for appellant. *Mr. W. P. Black* was on his brief.

*Mr. Job Barnard* and *Mr. William F. Mattingly* for appellees. *Mr. James S. Edwards* was on their brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

By deed dated March 8, 1886, and duly recorded, an unimproved lot or parcel of land, in the city of Washington, known as lot 49 in square 111, was conveyed by Henry C. Porter to Seymour Cunningham and John S. Blair to secure the balance of the unpaid purchase money therefor due to one William Brough, evidenced by Porter's two promissory notes, each for twelve hundred and fifty dollars, bearing even date with the above trust deed, and payable to the order of Brough.

On the 3d day of September, 1887, Porter conveyed the same property to Robert E. Moore and his wife Carlotta M. Moore, to have and to hold the same to the grantees, their heirs and assigns as tenants by the entirety. As part of the consideration for this last conveyance, the grantee, Carlotta M. Moore, agreed to assume and pay the debt to Brough.

By deed bearing the same date as the one from Porter to Moore and wife, and executed contemporaneously therewith, Robert E. Moore and Carlotta M. Moore conveyed the premises to Charles Early and Joseph T. Dyer in trust to secure the sum of sixteen hundred dollars, being the balance of the deferred purchase money due to Porter, and evidenced by the promissory note of Moore and wife, payable to the order of Porter.

On the 29th day of April, 1888, Robert E. Moore died, and the premises in question became the absolute and separate property of Carlotta M. Moore in fee simple, subject to the prior liens.

In 1889 Mrs. Moore borrowed from Sarah Utermehle the sum of eight thousand dollars for which she executed her note, dated October 22, 1889, payable three years after date, with interest at six per cent per annum, payable quarterly. In order to secure the payment of that note, she conveyed by deed on the same day the above premises and appurtenances to William R. Woodward and Leroy M. Taylor and their heirs as joint tenants, with the usual provisions for a release of the lien in case of the payment of the note; and also in trust to permit her, her heirs or assigns, to use and occupy the described land and premises, and the rents, issues and profits thereof, to take, have and apply to and for her and their sole use and benefit, until default should be made in the payment of the debt thereby secured or any instalment of principal or interest, as the same became due and payable, or any proper cost, charge, commission or expense in and about the same. That deed contained the clause usually-found in such instruments, authorizing the trustees, upon any default in the payment of the debt or of any instalment of principal or interest, as the same should become due and payable, or any proper cost, charge, commission or expense in and about the same, to sell the land and premises at public auction upon such terms and conditions, at such time and place, and after such previous public advertisement as they or the survivor of them should deem advantageous and proper; and to convey the same in fee simple to and at the cost of the purchaser or purchasers thereof, who were not required to see to the application of the purchase money.

The last-named transaction was consummated pursuant to an agreement between Mrs. Moore and Mrs. Utermehle, and under the following circumstances. Mrs. Moore was in default in respect of the payment of the sums secured by the above trust deeds of 1886 and 1887, and being threatened with a foreclosure and sale under those deeds, and having no property except the premises in question, and desiring also to improve the same by the erection of a substantial building for the purposes of a home, applied to Mrs. Utermehle for a loan of eight thousand dollars for the period above named, to be

secured by a deed of trust, in the usual form, on the land and premises. She represented the title to the premises to be good and unincumbered otherwise than by the above trust deeds. Her application, the bill states, was accompanied by an assurance upon her part that she would immediately commence the construction of a substantial brick building upon the lot and premises, with suitable provisions to secure the payment or application of all the proceeds of the loan " not required to take up the said overdue notes, representing said unpaid purchase money, taxes then due, expense of examination of title to said land and premises, conveyancing and other incidental expenses incurred on account of the negotiation of said loan, all of which were also to be taken up or paid therefrom towards such construction." Relying upon said premises and the proposed security offered by her, eight thousand dollars was loaned by Mrs. Utermehle to Mrs. Moore. Out of that sum, pursuant to the agreement or understanding between Mrs. Moore and Mrs. Utermehle, the latter took up the notes representing the unpaid purchase money secured by the above trust deeds, and paid the taxes then due on the property, together with the expense of examining the title and other expenses, all amounting to $3291.99, which sum was paid directly by Mrs. Utermehle to the holders of the notes and the parties to whom the expenses and taxes were payable. Thereupon Mrs. Moore procured the services of J. W. Myers, a builder, and entered upon the construction of a substantial brick dwelling upon the lot and premises, as agreed upon, and as the condition of the loan to her, and the balance of the eight thousand dollars was expended in the purchase of materials furnished for and used in its construction, and to pay laborers, mechanics and others for work done thereon. The house was completed, and is known as No. 1612 Nineteenth street northwest. Mrs. Moore moved into it about two months after its completion.

Subsequent to the loan, Mrs. Moore married the appellant Wilburne P. MacGreal, and the house and lot is occupied by them as a home.

Before the present suit was instituted, Mrs. MacGreal,

ander date of June 13, 1890, addressed to Mrs. Taylor a communication, as follows: "In response to your recent communication calling attention to my non-payment of interest upon the note held by you as the representative of Mrs. Utermehle, I would say that I consider that I have not been well treated in the entire transaction, and inasmuch as the property now owned by me is threatened with a suit to enforce mechanics' liens now already filed, I have taken legal advice upon the subject. As I was a minor at the time of these transactions — the execution of the deed of trust, etc. — I am advised that the affirmance or disaffirmance of the contract rests in my *direction* [discretion] when I become of age. I therefore will not pay the interest demanded and at the proper time will take such action as I may be advised to protect my rights."

Subsequently, on the 23d of June, 1890, she executed and placed of record an instrument, in which she gave notice that she disaffirmed the deed of trust of October 22, 1889, and the note described in it. On the same day she executed the following paper: "I hereby disaffirm a certain contract alleged to have been entered into between one Joseph W. Myers and myself October 28, 1889, and I disclaim any and all liability thereunder, for the reason that at the time of the making of said alleged contract I was a minor under the age of twenty-one years, and became of age June 20, 1890; of all which take due notice." And on June 27, 1890, she executed, and recorded July 14, 1890, a deed disaffirming the deed of trust executed to Taylor and Woodward, upon the ground that said deed had been executed and delivered when she was a minor.

The quarter-yearly instalment of interest due the 22d day of April, 1890, on the debt secured by the deed of October 22, 1889, not having been paid, after notice to Mrs. MacGreal of its non-payment this action was instituted by Mrs. Utermehle on the 23d of June, 1890, for the recovery of the amount due on the note given to her, and for a decree for the foreclosure of the deed of trust of October 22, 1889, and a sale of the property in satisfaction of the amount due to her.

She asked for such other and further relief in the premises as the nature of the case required.

Admitting the execution of the deed to Woodward and Taylor, and the note therein described, Mrs. MacGreal resisted the relief asked upon the ground that at the date of the execution of the deed and note she was under the age of twenty-one years, and within a reasonable time after reaching full age she made and placed upon record an absolute disclaimer of the alleged contract; of which disclaimer and the reasons assigned therefor, it is claimed, Mrs. Utermehle, the original plaintiff and testatrix of the appellees, had due notice. Her husband disclaimed in his answer any personal knowledge of the matter in dispute, and insisted that the bill did not state facts entitling the plaintiff to the relief asked. Woodward and Taylor, trustees, answered, admitting the allegations of the bill, and expressing their submission to any decree that might be just and proper. Indeed, the arrangement between Mrs. Utermehle and Mrs. MacGreal was made in good faith on each side.

It is not disputed that Mrs. MacGreal arrived at full age on the 20th day of June, 1890. And it may be stated, as the result of the testimony, that when the deed of October 22, 1889, was executed no inquiry was made as to her age, nor did she make any representation on that subject.

In the Supreme Court of the District of Columbia a decree was rendered dismissing the bill. But in the Court of Appeals of the District that decree was reversed, and a decree passed which adjudged that there was due from Mrs. MacGreal to the executrices of Mrs. Utermehle the sum of $8000 with interest at the rate of six per cent per annum until paid, and the costs of suit; and directing that, on default in the payment of principal, interest and costs aforesaid by a day named, the lot in question with the improvements thereon be sold and the proceeds applied in payment of such sum. 1 App. D. C. 359.

The principal propositions made on behalf of the appellants are:

That the mortgage sought to be foreclosed and the note

described therein having been executed by the maker during her minority, and without any fraud on her part, and nothing in the way of ratification having occurred, it was competent for the mortgagor, upon arriving at full age, to disaffirm the contract altogether, and thus defeat the lien created by that mortgage upon her property;

That while a minor may not, upon reaching his majority, disaffirm his contract and retain such of the fruits of the contract as are in his hands "in specie" at the time of disaffirmance, if he has parted with the specific thing received by him under the contract, or if its form has been so changed that its return in specie is impossible, his right to disaffirm cannot be questioned; and,

That the exercise of the right of disaffirmance is not, in law, a fraud, although it may work hardship upon the other party to the contract, nor is a failure to disclose the fact of infancy at the time of entering into the contract a fraud that will affect such right.

These propositions, it is said, are sustained by *Tucker* v. *Moreland*, 10 Pet. 58, 70, 71, 73, 74, 77, and *Sims* v. *Everhardt*, 102 U. S. 300, 301, 312.

*Tucker* v. *Moreland* was an action of ejectment, in which plaintiff's right of recovery depended upon his having the benefit of a deed of trust executed by an infant, but which he disaffirmed after reaching full age. This court, speaking by Mr. Justice Story, said: "It is apparent, then, upon the English authorities, that however true it may be, that an infant may so far bind himself by deed in certain cases, as that in consequence of the solemnity of the instrument it is voidable only, and not void; yet that the instrument, however solemn, is held to be void, if upon its face, it is apparent that it is to the prejudice of the infant. This distinction, if admitted, would go far to reconcile all the cases; for it would decide, that a deed by virtue of its solemnity should be voidable only, unless it appeared on its face to be to his prejudice, in which case it would be void." "To give effect to such disaffirmance it was not necessary that the infant should first place the other party in *statu quo*." "The result of the American decisions,"

the court continued, "has been correctly stated by Mr. Chancellor Kent, in his learned Commentaries, 2 Com. Lect. 31, to be, that they are in favor of construing the acts and contracts of infants generally to be voidable only, and not void, and subject to their election, when they become of age, either to affirm or disallow them ; and that the doctrine of *Zouch* v. *Parsons*, 3 Burrow, 1794, has been recognized and adopted as law. It may be added, that they seem generally to hold, that the deed of an infant conveying lands is voidable only, and not void ; unless, perhaps, the deed should manifestly appear on the face of it to be to the prejudice of the infant ; and this upon the nature and solemnity, as well as the operation of the instrument." Again : "In many cases, the disaffirmance of a deed made during infancy, is a fraud upon the other party. But this has never been held sufficient to avoid the disaffirmance, for it would otherwise take away the very protection, which the law intends to throw around him to guard him from the effects of his folly, rashness and misconduct. In *Saunderson* v. *Marr*, 1 H. Bl. 75, it was held, that a warrant of attorney, given by an infant, although there appeared circumstances of fraud on his part, was utterly void, even though the application was made to the equity side of the court, to set aside a judgment founded on it. So, in *Conroe* v. *Birdsall*, 1 John. Cas. 127, a bond made by an infant, who declared at the time, that he was of age, was held void, notwithstanding his fraudulent declaration ; for the court said that a different decision would endanger all the rights of infants. A similar doctrine was held by the court in *Austin* v. *Patton*, 11 Serg. & Rawle, 309, 310. Indeed, the same doctrine is to be found affirmed more than a century and a half ago, in *Johnson* v. *Pie*, 1 Lev. 169 ; *S. C.* 1 Sid. 258 ; 1 Kebb. 913."

In *Sims* v. *Everhardt* it appeared that Mrs. Sims, a minor, — her husband uniting with her — sold and conveyed her land to Mrs. Everhardt, who paid the purchase money. Some doubt being expressed as to the age of the grantor, she stated in writing on the deed that she was then over twenty-one years of age. The purchaser went into possession, paid off a

mortgage and taxes on the property, continued in possession, and made improvements up to her death. Subsequently Mrs. Sims was divorced from her husband, for his fault, and shortly afterwards she gave notice to the devisees of Mrs. Everhardt that she disaffirmed the deed in question, and demanded possession of the land. That demand not having been complied with, she brought suit against the devisees of her grantee to set aside the deed and for an account of the rents and profits of the land, "as well as of the amount she was in duty bound to pay to the defendants on account of the purchase money by the grantee, and the mortgage aforesaid." The court below, upon final hearing, dismissed the bill. This court reversed the decree, holding that, under the peculiar circumstances of the case, including the fact that Mrs. Sims labored under the disability of coverture when she made the deed, her disaffirmance of it was within a reasonable time, and that she was entitled to the decree asked. Mr. Justice Strong, delivering the opinion of the court, said: "The remaining question is whether she is estopped by anything which she has done from asserting her right to the land in controversy. In regard to this very little need be said. It is not insisted that she did anything since she attained her majority which can work an estoppel. All that is claimed is that when she made her deed she asserted she was of age and competent to convey. We are not, therefore, required to consider how far a married woman can be estopped by her acts when she has the single disability of coverture. The question is, whether acts and declarations of an infant during infancy can estop him from asserting the invalidity of his deed after he has attained his majority. In regard to this there can be no doubt, founded either upon reason or authority. Without spending time to look at the reason, the authorities are all one way. An estoppel *in pais* is not applicable to infants, and a fraudulent representation of capacity cannot be an equivalent for actual capacity. *Brown* v. *McClune,* 5 Sandf. Super. Ct. 224; *Keen* v. *Coleman,* 39 Penn. St. 299. A conveyance by an infant is an assertion of his right to convey. A contemporaneous declaration of his right or of his age adds nothing to what is

implied in his deed. An assertion of an estoppel against him is but a claim that he has assented or contracted. But he can no more do that effectively than he can make the contract alleged to be confirmed." It may be observed that the court did not decide, in that case, that Mrs. Sims was entitled to the land without accounting to the estate of Mrs. Everhardt for the purchase money, and for the amount paid in order to discharge the mortgage debt upon it.

These cases do not determine the vital questions arising in the one before us. They undoubtedly do hold that an infant's deed is voidable only, unless it appears upon its face to be to his prejudice, in which case it may be deemed void; also, that he is not estopped by his acts or declarations, however fraudulent, or by his silence, during infancy, from asserting, upon arriving at full age or within a reasonable time thereafter, the invalidity of such deed.

In the present case, it is beyond question that Mrs. Mac-Greal's deed, made while she was a widow and an infant, was voidable and that she disaffirmed it within a reasonable time after reaching her majority.

But does it follow that the plaintiffs are not entitled to relief on account of the money advanced by their testatrix, and which was lent to be applied and was applied in making valuable improvements upon the lot owned by the infant? If the money obtained from Mrs. Utermehle, the repayment of which was attempted to be secured by the deed of trust of October 22, 1889, had been paid directly to the infant, and, prior to the institution of this suit, had been all expended otherwise than in the improvement of her lot, the case would not be so difficult of solution ; for it is well settled that it is not a condition of the disaffirmance by an infant of a contract made during infancy that he shall return the consideration received by him if, prior to such disaffirmance and during infancy, the specific thing received has been disposed of, wasted or consumed and cannot be returned. In *Boyden* v. *Boyden*, 9 Met. 519, 521, Chief Justice Shaw, after observing that a contract with an infant is binding upon the other party until it is disaffirmed by the infant, said that if the infant " elects to disaf-

firm it, he annuls it on both sides, *ab initio*, and the parties revert to the same situation as if the contract had not been made. If the minor refuses to pay the price, as he may, the contract of sale is annulled, and the goods revest in the vendor." In *Green* v. *Green*, 69 N. Y. 553, Chief Justice Church, delivering the opinion of the court, said : " The right to repudiate is based upon the incapacity of the infant to contract, and that incapacity applies as well to the avails as to the property itself, and when the avails of the property are improvidently spent or lost by speculation or otherwise during minority, the infant should not be held responsible for an inability to restore them. To do so would operate as a serious restriction upon the right of an infant to avoid his contract, and in many cases would destroy the right altogether." In *Monumental Building Association &c.* v. *Herman*, 33 Maryland, 128, 133, it was said : " If the infant disaffirm an executed contract, and the specific consideration can be restored, in whole or in part, the infant is treated as a trustee of the other party, and must give it up; but where the articles received by him are consumed or the money spent, the party advancing them is without a remedy." So in *Chandler* v. *Simmons*, 97 Mass. 508, 514, the court said : " Another ground relied on by the defendant is that the deed [by the infant] cannot be avoided without a return of the consideration. We do not understand that such a condition is ever attached to the right of a minor to avoid his deed. If it were so, the privilege would fail to protect him when most needed. It is to guard him against the improvidence which is incident to his immaturity, that this right is maintained. *Gibson* v. *Soper*, 6 Gray, 279, 282 ; *Boody* v. *McKenney*, 23 Maine, 517. If the minor, when avoiding his contract, have in his hands any of its fruits specifically, the act of avoiding the contract by which he acquired such property will divest him of all right to retain the same ; and the other party may reclaim it. He cannot avoid in part only, but must make the contract wholly void if at all ; so that it will no longer protect him in the retention of the consideration. *Badger* v. *Phinney*, 15 Mass. 359 ; *Bigelow* v. *Kinney*, 3 Vermont, 353. Or, if he

retains the use or disposes of such property after becoming of age, it may be held as an affirmance of the contract by which he acquired it, and thus deprive him of the right to avoid. *Boyden* v. *Boyden*, 9 Met. 519; *Robbins* v. *Eaton*, 10 N. H. 561. But if the consideration has passed from his hands, either wasted or expended during his minority, he is not thereby to be deprived of his right or capacity to avoid his deed, any more than he is to avoid his executory contracts. And the adult who deals with him must seek the return of the consideration paid or delivered to the minor in the same modes and with the same chances of loss in the one case as in the other. *Dana* v. *Stearns*, 3 Cush. 372, 376. It is not necessary, in order to give effect to the disaffirmance of the deed or contract of a minor, that the other party should be placed in *statu quo*. *Tucker* v. *Moreland*, 10 Pet. 58, 65, 74; *Shaw* v. *Boyd*, 5 S. & R. 309." See also 1 Am. Lead. Cases, 5th ed. *224, *232, *249, *259; *Mustard* v. *Wohlford's Heirs*, 15 Gratt. 329, 340; *Cresinger* v. *Welch's Lessee*, 15 Ohio, 156; *Eureka Co.* v. *Edwards*, 71 Alabama, 248, 256; *Corey* v. *Burton*, 32 Michigan, 30; *Price* v. *Furman*, 27 Vermont, 268, 271; *Robinson* v. *Weeks*, 56 Maine, 102, 107; *Carpenter* v. *Carpenter*, 45 Indiana, 142, 146; *Harvey* v. *Briggs*, 68 Mississippi, 60, 66; *St. Louis &c. Railway* v. *Higgins*, 44 Arkansas, 293, 297; *Reynolds* v. *McCurry*, 100 Illinois, 356, 359; Tyler's Infancy & Coverture, § 37, and authorities cited.

Does the present case come within the rule upon which Mrs. MacGreal relies? Under the terms of the loan, the money obtained from Mrs. Utermehle was used in lifting existing valid mortgages from her lot and in placing substantial improvements upon it; and she is in actual possession of the lot so improved and freed from the liens created by the deeds of March 8, 1886, and September 3, 1887, and subject to which she acquired the property. A court of equity will look at the real transaction, and will do justice to the adult if it can be done without disregarding or impairing the principle that allows an infant, upon arriving at majority, to disaffirm his contracts made during infancy. Mrs. MacGreal having disaffirmed her deed of October 22, 1889, she is not entitled, as between

herself and the estate of Mrs. Utermehle, to be protected except in the enjoyment of such rights in the property in question as she had at the time it was incumbered by her disaffirmed deed of trust. She is not entitled to make profit out of those whose money has been used, at her request, in protecting and improving her estate. Her lot was subject to prior liens on account of the debts due to Brough and Porter as well as for taxes. Those debts have been discharged, and her property is no longer in any danger from them. The liability of her property for those debts when the deed of 1889 was executed cannot be questioned. These debts having been paid by Mrs. Utermehle, the appellees are entitled, in equity, to be subrogated to the rights of the persons who held them, and who were about to foreclose the liens therefor when the application was made to Mrs. Utermehle for the loan of $8000 to be used in meeting those debts and in improving the lot in question. 1 Jones on Mortgages, §§ 874, 877, and authorities cited. And within the meaning of the rule that, upon the infant's disaffirmance of his contract, the other party is entitled to recover the consideration paid by him which remains in the infant's hands or under his control, it may well be held — and gross injustice will be done in this case if it be not so held — that the money borrowed from Mrs. Utermehle is, in every just sense, in the hands of Mrs. MacGreal. To say that the consideration paid to Mrs. MacGreal for the deed of trust of 1889 is not in her hands, when the money has been put into her property in conformity with the disaffirmed contract, and notwithstanding such property is still held and enjoyed by her, is to sacrifice substance to form, and to make the privilege of infancy a sword to be used to the injury of others, although the law intends it simply as a shield to protect the infant from injustice and wrong.

But we are of opinion that the court below erred in adjudging, as, in effect, it did adjudge, that the appellees are entitled to have their *entire* debt first paid, even if all the proceeds of sale be required for that purpose. The decree should have been so framed as to place Mrs. MacGreal, so far as it could be done, in the position occupied by her at the time the deed

of trust was given; for only by such a decree can the privilege of infancy, resulting from incapacity to contract, be effectively protected. A decree giving the appellees a preference in the distribution of the proceeds of sale for their entire claim necessarily must rest upon the ground that one who obtains from an infant a deed of trust conveying his real estate to secure the repayment of money loaned to him, and to be applied, and which is applied, in improving such estate, may thereby make the disaffirmance of the infant ineffectual in every case where the property, upon being sold, does not bring more than the debt attempted to be secured. But no such result can properly happen if the court enforces the established rule that, upon the disaffirmance of a deed made during infancy, the infant is entitled to recover the property conveyed by him, and the adult to recover such of the consideration paid by him as may remain in the hands of the infant at the time of disaffirmance. As Mrs. MacGreal ought not to hold the property in its improved state without accounting, as far as possible, for the money used in protecting it from sale for existing liens, and in improving it, there must be a sale in order that justice may be done. But as the disaffirmance of her deed restores her rights in the property, a sale ought not to have the effect of depriving her of the interest she had at the time the deed of trust was executed. The decree for a sale was proper, but, upon the showing made by this record, it should direct the proceeds to be applied, first, in repaying to the appellees, with interest, the sums paid by Mrs. Utermehle in discharge of the prior liens created by the deeds of 1886 and 1887 and by the taxes then upon the property; second, in paying Mrs. MacGreal an amount equal to the value of the lot at the institution of this suit (less such prior liens and taxes) without interest on that amount, and without taking into consideration the value of the improvements placed on the lot; and third, in paying to the appellees such of the proceeds of sale as may remain, not exceeding the balance due on the loan, with interest. This last sum would represent, so far as may be, the value of the improvements put upon the lot with Mrs. Utermehle's money. *Lynde* v.

*McGregor*, 13 Allen, 182, 185. Any other decree will make the disaffirmance by the infant ineffectual, if the property, upon being sold, does not bring more than the debt attempted to be secured. If the property, in its improved condition, does not bring enough to pay the whole debt due the appellees, they will be without remedy for the deficiency. If any balance should remain after satisfying the above claims in the order mentioned, it will belong to Mrs. MacGreal.

*The decree is reversed, and the cause remanded for further proceedings in conformity with this opinion.*

THE CHIEF JUSTICE and MR. JUSTICE BROWN are of opinion that the judgment should be affirmed.