### MONTGOMERY et al. v. CITY COUNCIL OF CHARLESTON.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 335.

1. EQUITABLE SUBROGATION—VOLUNTEER.

One who voluntarily pays a tax to a city, for which neither he nor his property is liable, is not entitled to be subrogated in equity to the rights of the city as against the property or its owner.

2. EQUITY—MISTAKE AS GROUND FOR RELIEF—NEGLIGENCE.

The fact that one who voluntarily paid taxes to a city on property of another, for which he was in no way liable, was ignorant of the fact that the validity of such taxes was disputed by the owner of the property and was in litigation, does not entitle him to relief in equity on the ground

of mistake, either against the city or the property owner. where he could have learned such facts by reasonable inquiry, but made no inquiry whatever.

3. SAME—VOLUNTARY PAYMENT OF TAXES—PURCHASER AT JUDICIAL SALE.

A purchaser at foreclosure sale of the property of a manufacturing corporation, which he was entitled to have delivered to him free from tax liens before complying with his bid, paid certain taxes levied against the property by a city, and sought to have the amount deducted from the purchase price. Both the corporation and its mortgagees claimed that the property was exempt from such taxes under an ordinance, and the city had filed an intervening petition in the foreclosure suit, seeking to have the taxes established as a lien upon the fund in court, which petition had not been passed on. *Held*, that the action of the purchaser in voluntarily paying the taxes eliminated the issue as to their validity from the case, and he could not require the court to determine it for his benefit, and to allow the amount as a credit on his bid if the tax was found valid, or to compel the city to refund it if found invalid.

4. PARTIES—INTERVENER--EXTINGUISHMENT OF INTEREST.

The city, having no interest in or connection with the suit, except for the collection of its taxes from the fund in court, on the payment of such taxes ceased to be a party, and could not again be brought into such suit for the purpose of litigating the validity of the taxes; nor could that question be determined in its absence.

Waddill, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This case comes up on appeal from the circuit court of the United States for the district of South Carolina. In order to a complete understanding of the case, it is necessary to state the facts somewhat in detail:

On 8th February, 1888, there was incorporated the Charleston Cotton Mills, a corporation organized for the purpose of manufacturing cotton cloth in the city of Charleston, S. C. It erected a mill building on its lands, and owned real estate adjacent thereto, on which were a cotton warehouse and residences for its operatives. In March, 1896, it became embarrassed, ceased operations, and finally, under decrees for foreclosure, its property was sold under two mortgages executed by it,—the one to secure certain bondholders, and the other to secure a debt due to O. H. Sampson & Co. O. H. Sampson & Co. purchased the parcel of realty mortgaged to them. The bondholders, through a committee, purchased the mill site, buildings, and machinery. On 6th April, 1897, the Charleston Mills was incorporated under a general law, composed of the bondholders of the Charleston Cotton Mills and new stockholders. To this corporation the committee of bondholders conveyed all the property purchased by them under the foreclosure proceedings. The new company expended large sums of money in providing new machinery and repairing that purchased at the sale, and engaged in the business of manufacturing cotton goods.

The constitution of South Carolina, adopted 4th December, 1895, authorized cities and towns to exempt from all taxes, except those for school purposes, manufactories established within their limits; the exemption to be for five years; the exempting ordinance to be ratified by a majority of the qualified electors of the municipality. Article 8, § 8. In 1896 the city council of Charleston, under this authority, passed an ordinance exempting for five years from taxation, except for school purposes, all manufactories established after the ratification of this ordinance by the qualified voters of Charleston, within the corporate limits of said city, and doing business therein, employing ten hands, and having a paid-up capital of $10,000, with this proviso: "Provided, however, that should any manufactory entitled under this ordinance to such exemption from taxes, fail in business and be reorganized or convey its plant and property to another person, firm or new company or corporation, the exemption of said plant or property shall be continued or extended for the five years from the original establishment of said manufactory and no longer." This ordinance was ratified by popular vote on the fourth Tuesday in April, 1896. The

Charleston Mills set up a claim for exemption under this ordinance, and so notified the city authorities. On 19th November, 1898, pending this claim for exemption on the part of the Charleston Cotton Mills, Walters and others filed their bill for foreclosure in the circuit court of the United States for the district of South Carolina against the Charleston Mills, praying sale and foreclosure of its property; and under it C. O. Witte, Esq., was appointed receiver. On 13th December, 1898, the city council of Charleston filed its petition in the cause, setting forth that the Charleston Mills was indebted to it for municipal taxes in the sum of $3,356.52, and that they were unpaid, and, recognizing that the property of its debtor was in the hands of a receiver of that court, and so out of reach of an execution, prayed that provision be made for these taxes out of the first moneys coming into the hands of the receiver. After that an order for the sale of the property under a decree for foreclosure was had. The property was sold for $100,000, and was bid in by John H. Montgomery for himself and others, who organized themselves into a corporation in due form of law, under the name of the Vesta Mills. Before he complied with his bid,— indeed, the day after the sale,—Mr. Montgomery paid the state and county taxes due upon the property of the Charleston Mills, and also paid, without protest or exception, the amount of the taxes claimed by the city council of Charleston, and took full acquittance and discharge therefor. When he was ready to comply with his bid, he produced the receipted tax bill for state and county purposes, and asked the special master that it be received as so much cash. This was assented to. He then produced the tax receipt of the city council, and made a similar request. This was refused, the special master (knowing that the claim was disputed) not feeling himself authorized so to receive it without the decision and order of the court. Thereupon it was agreed between them that the matter be brought before the court. Accordingly Mr. Montgomery and the Vesta Mills filed their petition in the cause, setting forth the matters above stated; "that Mr. Montgomery now has been informed that the liability of the property of the Charleston Mills to general municipal taxes is denied"; that, wholly ignorant of this, on the day the property was sold he paid the city taxes upon it, securing thereby a remission of all penalties, and also in order to anticipate a levy on the property under execution; that, having so paid this tax, he sought credit therefor in completing the terms of sale, and that the special master declined to recognize the payment of the taxes made to the city; "that thereafter your petitioners arranged with the said special master to pay into his hands the purchase money for the property bought at said sale, including the amount of the city taxes aforesaid (the said special master not feeling himself authorized to allow such reduction without the decision and order of the court), but that it was at the same time agreed that the said matter of the city taxes should be forthwith brought to the attention of the court in this case, so that the said court could decide whether or not the city taxes were by law due and payable, and a lien upon the property of the Charleston Mills, and that if the said taxes were decided by the said court to have been so due and payable, and a lien as claimed, then the said amount should be refunded to your petitioners by the special master, as having been already paid on account of the purchase money, but that, if the said court should decide that the taxes were not due and payable, then, by proper order of this court, the city council of Charleston should be directed, after proper hearing and adjudication, to refund and repay into the registry of this court the amount of city taxes paid to it by the said John H. Montgomery, to wit, the sum of $3,076.02." The petition prayed that a copy of it be served on the city council of Charleston and on C. O. Witte, special master, and that the court would afford relief. The city council of Charleston answered the complaint,—stating, in effect, that the tax on the Charleston Mills was due and unpaid, and that execution had been issued therefor in the sum of $3,356.52; that it was stayed by the proceedings in the circuit court, and that petition had been filed for its payment under the order of court; that afterwards Mr. Montgomery paid the sum of $3,076.02, and obtained a receipt in full; "that the said payment was made freely and voluntarily, and for the purpose of obtaining remission of the penalties." The answer denies in toto the exemption claimed for the Charleston Mills, and adds that this honorable court has no jurisdiction to adjudicate the matters set forth in said petition,

as between John H. Montgomery and the said city, for the reason that it is simply an attempt on the part of the said John H. Montgomery to recover money from the city council of Charleston in a matter entirely foreign and outside of the purpose and purport of the bill filed herein. The answer of the special master admits the offer of Mr. Montgomery to deduct the amount paid to the city, and insists that the Charleston Mills are exempt from taxation.

The matters set out in the petition and answers, with testimony, were heard by the circuit court. The court was of the opinion that the city council of Charleston, having received satisfaction in pais, was no longer a party to the controversy, and declined, under these circumstances, to pass upon the validity of the exemption. To this action on the part of the court, exception was taken, an appeal was allowed, and the cause is here on several assignments of error, directed to the reasons given by the court for its action, and ending with the following: "Because his honor should have held that the city taxes were a lien on the property purchased, legally, and payable by the seller, and that under the law, and in accordance with the agreement made at the time of settlement with the receiver and special master, referred to and set out in the record, the portion of said purchase money so paid twice, to wit, the sum of $3,076.02, by the purchaser, should be repaid him; it being against the law and equity and good conscience to have such sum retained by said special master and receiver."

Augustine T. Smythe and Frank R. Frost, for appellants.

W. A. Holman, J. N. Nathans, and H. A. M. Smith (George S. Legare, on the brief), for appellee.

Before SIMONTON, Circuit Judge, and PAUL and WADDILL, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). In discussing this case, these facts must be kept in mind: That under the Walters bill the property of the Charleston Mills had been put into the hands of a receiver, and, under an order of the court, had been sold. That pending the suit the city council of Charleston had presented its claim for the tax of 1898, and had prayed that it be paid out of funds in the hands of the receiver. That anterior to the suit the Charleston Mills had set up its claim to exemption from the tax. That the petitioner, John H. Montgomery, was the highest bidder at the sale. That the day after the sale he paid to the city the sum of $3,076.02 in full of its claim against the Charleston Mills. That, in settlement of his bid, Mr. Montgomery demanded credit for this payment, which demand the special master did not recognize, and refused to admit, except under the instruction of the court. Thereupon John H. Montgomery and the Vesta Mills, a corporation for which he had been acting, filed their petition, praying that the court pass upon the validity of the tax, and, if it be declared valid, that the money paid by Montgomery on account thereof be refunded to him out of the purchase money, and, if it be declared invalid, that the city council be instructed to return it to him. If the tax be valid, he, in effect, claims the equity of subrogation; that is, having paid the tax, he stands in the place of the city council, and is entitled to the money paid to it. He was under no obligation whatever to pay the tax, nor was any proceeding threatened against the property of which he was the prospective owner. The city council had already submitted itself to the court, and had asked that it be paid out of funds in the control of the court; in

effect, transferring its claim from the property to these funds. Its hand was stayed, and any attempt by execution to collect its claim would have been in contempt of court. In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689. Mr. Montgomery was not bound to pay the tax, and he had an unquestionable right to demand that it be satisfied before complying with his bid.

In Gadsden v. Brown, Speer, Eq. 37, David Johnson, Chancellor, lays down the law of subrogation, and his language has received the unqualified approval of the supreme court of the United States in Hedges v. Dixon Co., 150 U. S. 191, 14 Sup. Ct. 71, 37 L. Ed. 1044, and in Prairie State Nat. Bank v. U. S., 164 U. S. 231, 17 Sup. Ct. 142, 41 L. Ed. 412. "The doctrine of subrogation," says the chancellor, "is a pure, unmixed equity, having its foundation in the principles of natural justice, and, from its nature, never could have been intended for the relief of those who were in any condition in which they were at liberty to elect whether they would or would not be bound."

In Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537, the supreme court says:

"One of the principles lying at the foundation of subrogation in equity, in addition to the one already stated, that the person seeking this subrogation must have paid the debt, is that he must have done this under some necessity to save himself from loss which might arise or accrue to him by the enforcement of the debt in the hands of the original creditor."

The same case adopts this language of Sheld. Subr. § 240:

"The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own."

And in Suppinger v. Garrels, 20 Ill. App. 625, it is said:

"A stranger, within the meaning of this rule, is not necessarily one who has nothing to do with the transaction out of which the debt grew. Any one who is under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, is a mere volunteer."

A mere volunteer is not favorably regarded in equity. Fonbl. Eq. 349. "Volenti non fit injuria." Apart from this, the creditors of the Charleston Mills, to whom the proceeds of sale belong, and who must suffer by any diminution of them, repudiate the act of Mr. Montgomery, and deny all liability for the tax. Nor is this position without plausibility. The constitution of South Carolina of 1895 gave authority to municipalities to grant exemption from taxation to manufacturers for five years, upon certain conditions. The city council of Charleston fulfilled these conditions, and by ordinance exempted from taxation all manufactories established after the fourth Tuesday in April, 1896, within the corporate limits of said city, and doing business therein, employing 10 or more hands. and having a paid-up capital of $10,000. The Charleston Mills, having over $50,000 capital, and employing more than 10 hands, was established April 6, 1897, within the corporate limits of Charleston, and doing business therein, and thus may be said to come within the words

of the ordinance, and would be entitled to the exemption, unless precluded by the proviso. This proviso is in these words:

"Should any manufactory entitled under this ordinance to such exemption from taxes, fail in business and be reorganized or convey its plant and property to another person, firm or a new company or corporation, the exemption of said plant or property shall be continued or extended for the five years from the original establishment of said manufactory and no longer."

The mill and a large part of the plant owned by the Charleston Mills were formerly the property of the Charleston Cotton Mills, which failed, was put up for sale, and its mill house and plant were purchased by persons who subsequently formed the Charleston Mills. But the Charleston Cotton Mills was incorporated and established February 8, 1888,—anterior to the constitutional provision, and anterior to the ordinance of 1896. It therefore can with much plausibility be said not to have been one of the manufactories referred to in the proviso of the ordinance, as it was not a manufactory entitled under the ordinance of 1896 to such exemption from taxes, and so the Charleston Mills may not be affected by that proviso. Under these circumstances, the creditors may well complain of the action of John H. Montgomery, and, as far as they can, repudiate the same. There can exist here no equity of subrogation.

The petitioner again sets up an equity of mistake. He knew nothing of the claim of exemption set up by the Charleston Mills, nor had he any knowledge of the petition of the city council in the main cause. There is no question that a court of equity will relieve a party from the consequences of a mistake of fact,—sometimes of a mistake of law, if the matter be executory. But it will grant such relief only when the mistake is mutual, material, and not caused by the negligence of the party seeking relief. Foster, Fed. Prac. § 2. Mr. Story, in his Equity Jurisprudence (section 146), says:

"It is not sufficient, however, in all cases, to give the party relief, that the fact is material, but it must be such as he could not, by reasonable diligence, get knowledge of when he was put on inquiry; for if, by such reasonable diligence, he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence. Thus, if a party has lost his cause at law from the want of proof of a fact which by ordinary diligence he could have obtained, he is not relievable in equity; for the general rule is that if a party becomes remediless at law, by his own negligence, equity will not relieve him."

In the case at bar Mr. Montgomery, before the sale was approved, before he had complied with his bid, and, under the rules of the court, before he could comply, paid off this claim. A question to his counsel would have informed him of the course taken by the city council in applying to the court for its claim. A question put to the special master selling the property would have put him in the possession of the fact that the claim of the city was denied. The fact that he was a stranger in the community, with no opportunity theretofore of knowing the laws of the municipality, should have put him doubly upon his guard, and have induced inquiry before action. Instead of this, consulting no one, asking no question, relying upon his own knowledge, he paid off a claim, not his own or which could affect him, anticipated and forestalled the action of

the court, and, in so far as lay in his power, decided the controversy of the creditors with the city against them. The petitioner cannot set up this equity. Nor can he, under it, obtain relief from the city council. Asking no questions, making no protest, threatened with no proceedings, of his own motion he paid this sum in full of the tax.

In Little v. Bowers, 134 U. S. 548, 10 Sup. Ct. 620, 33 L. Ed. 1016, there had been a controversy between the Central Railroad Company of New Jersey and the city of Elizabeth relative to its taxes. The decisions of the courts of New Jersey were against the railroad company, and by writ of error the case was carried to the supreme court. Pending the writ of error the taxes in dispute were paid. This ended the case, notwithstanding that the appellants insisted that there was no right to the tax in the city of Elizabeth. In that case the supreme court quote with approval the language of Chief Justice Shaw in Preston v. City of Boston, 12 Pick. 7:

"When a party not liable to taxation is called upon peremptorily to pay upon a warrant, and he can save himself and his property in no other way than in paying the illegal demand, he may give notice that he so pays it by duress, and not voluntarily, and, by showing that he is not liable, may recover it back as money had and received."

But, say the court, this rule does not apply when no attempt has been made by the treasurer to serve his warrant, no demand personally made on the company, nothing done to show an intent to use the legal process,—when all that appears is that the company was charged with the tax on the tax list; that it was delinquent; that, before any active steps were taken to enforce collection, the company presented itself at the treasurer's office, and, in the usual course of business, paid in full everything against it, under protest.

In Robinson v. City Council of Charleston, 2 Rich. Law, 319, the plaintiff had been called upon to pay, and had paid, a tax imposed by the city council of Charleston, which the court, in State v. City of Charleston, 2 Speer, 719, had decided unlawful. He brought his action to recover it back. It was dismissed. Says the court:

"In the case under consideration, the plaintiff paid his money without objection or reservation. He could have tendered the money demandable, and have gone on and submitted to legal proceedings against him, and in such proceedings he must have succeeded. In waiving his legal right, he may be regarded as having voluntarily given so much money to the city council for the privilege of letting his slaves work in the city without molestation. Like many others who have not complained, he may not have thought the tax wrong at the time, and may have regarded it as the price of protection and profitable employment."

In Peebles v. City of Pittsburg, 101 Pa. St. 304, it was held that an assessment for municipal improvements, voluntarily paid, cannot be recovered back, although the payment was under protest, and the law authorizing the assessment was subsequently adjudged unconstitutional. Many cases are cited in the opinion. The petitioner cannot rely upon his want of knowledge. The means of knowledge were within his touch. He sought none, used none. His own ignorance suggested inquiry. This cannot avail him. Under these circumstances, the court below refused to entertain the petition. It was of the opinion that the city council of Charleston was not

properly a party to the petition. But, even admitting that it was a party, how could the court pass upon the question of the validity or invalidity of this tax, when the action of the petitioner precluded absolutely any question? The creditors and the corporation wished the question decided. At the threshold the court was met by the fact that a decision was unnecessary, and could not be made, as the tax was already paid. California v. San Pablo & T. R. Co., 149 U. S. 308, 13 Sup. Ct. 876, 37 L. Ed. 747; Little v. Bowers, 134 U. S. 558, 10 Sup. Ct. 620, 33 L. Ed. 1016.

Exception was taken and error assigned to the ruling of the circuit court that the city council was not a party before it. When the main case was pending, the city council, pursuing the course most advisable under the circumstances, intervened in the cause, and presented its petition that the tax claimed by it be paid by the receiver. The only means of paying the tax was out of the proceeds of sale. Before this petition was answered, before it could be heard, before the only funds out of which it could be paid (the proceeds of sale) were realized, Mr. Montgomery forestalled the action of the court, and paid the tax, satisfying the claim of the city. Thenceforward there was no controversy. There was nothing upon which the petition or the court could operate, and the whole thing fell to the ground. San Mateo Co. v. Southern Pac. R. Co., 116 U. S. 141, 6 Sup. Ct. 317, 29 L. Ed. 589; Kimball v. Kimball, 174 U. S. 163, 19 Sup. Ct. 639, 43 L. Ed. 932. The sole purpose of the intervention was accomplished, and the connection of the city council with the case, due solely to this intervention, ceased. When, therefore, the present petitioner filed his petition, the city council was practically out of the court; and he endeavored to bring it in again, not upon an issue necessarily or incidentally arising out of the main case, and the issues there involved, but to protect himself from an improvident act on his part. A purchaser at a sale under foreclosure is not a party to the suit for all intents and purposes. By his bid he makes himself a party to the proceedings, and subject to the jurisdiction of the court for all orders necessary to compel the perfecting of his purchase, and with a right to be heard on all questions thereafter arising affecting his bid, which are not foreclosed by the terms of the decree of sale, or are expressly reserved to him by such decree. Kneeland v. Trust Co., 136 U. S. 95, 10 Sup. Ct. 950, 34 L. Ed. 379. But this does not authorize him to bring in a new party, or to raise new issues.

The court below, having reached the conclusion that the city council was not a party to the suit, declined to pass upon the question of the validity of the exemption claimed by the Charleston Mills, in the absence of the city council. This is assigned as error. That the appellant considered the city council a necessary party is shown by his seeking to make it a party. By his prayer he demonstrated the necessity. He sought reimbursement for his outlay in paying this tax,—from the receiver if the claim for exemption was invalid, and from the city council if the claim for exemption was valid. Indeed, under the well-known principle of equity "that a court of chancery will not make a decree unless all those who are substantially interested be made parties to the suit" (Osborne v. Bank of United States, 9

Wheat. 842, 6 L. Ed. 204), the city council was a necessary party. It is said, however, that it was competent for the court to go on and decide this question, as between the receiver and Mr. Montgomery, without the presence of the city. Cases are cited in which a course like this was pursued. Thus, courts frequently pass upon the validity of acts of the legislature, and construe acts whose validity is not disputed, in questions between citizen and citizen, without requiring or deeming it necessary to make the state a party. This is perfectly true, and the rule exists because of the impossibility of making the state a party without imperiling the jurisdiction of the court. See Osborne v. Bank of United States, supra. In cases arising under tax titles from municipalities, the municipality has no interest in the result of the action; for its interest had ceased, and the purchaser had taken under the rule of caveat emptor. But in the present case there is no question of the invalidity of the ordinance. The question made is one in which the city council had a direct, immediate, pecuniary interest, involving the right to $3,076.02. One of the alternatives relied on by the petitioner is that, when he paid the money to the city sheriff, it was a gratuitous act; that the money was received in violation of the contract of exemption made by the city with the Charleston Mills, under which the former exempted the latter from taxation for five years; that under these circumstances, ex æquo et bono, the city must return it. The other alternative is that there was no such contract of exemption. The petitioner, standing in court, claims that one or other—the receiver or the city council—must make him whole. To sustain him, both of these parties must be before the court. The conclusion reached by the circuit court in dismissing the petition is affirmed. Affirmed.

WADDILL, District Judge. I am unable to concur with the reasoning or in the result reached by the majority in this case. The appellant, John H. Montgomery, was a purchaser at a judicial sale, and, after making his purchase (imprudently, it may be, but in good faith), paid the taxes due on the property for the year 1898 to the city of Charleston. The special master, from whom he purchased, refused to allow him, in making settlement, a credit for the taxes thus paid; and he thereupon, in good faith, paid the same again to the special master, who brought the amount into court. The court, in my judgment, should at least have determined the question of whether the taxes were due to the city. If due, the fund was not prejudiced by payment of the same to the city, and the amount paid to the special master should be refunded. If the taxes were, as a matter of fact, due, the city will have received the same from this purchaser at a judicial sale, and the court by this decision will take the same money, and give it to the lien creditors, who, confessedly, would not be entitled to the amount if the city was. A purchaser at a judicial sale is neither a volunteer nor a stranger to the proceedings. The city council having prior to the sale intervened to have this question of the right to its taxes for that year settled, the city and the purchaser were before the court, and subject to its jurisdiction in the matter of the determination of their rights in the premises.

### Petition for Rehearing.

PER CURIAM. The opinion of the court having been filed in this case, affirming the conclusions reached by the circuit court, the appellant has filed a petition for rehearing. This petition has been carefully considered. The cause was fully argued before this court by able and exhaustive briefs and oral arguments. No new point has been presented, and no change has been effected in the mind of the court in the general principles set forth in the opinion. It cannot see why the receiver should be instructed to recognize the voluntary payment of the claim of the city council made by Mr. Montgomery, while the validity of the claim is denied, and we think with reason, by the creditors of the Charleston Mills. Nor would it be proper to order the receiver to indemnify Mr. Montgomery for his voluntary payment, and to assume the burden and responsibility of litigation upon it with the city council of Charleston. The prayer of the petition, therefore, will not be granted.

But the petition for rehearing brings to the attention of the court a fact which has been overlooked in the case, and which was not considered. The ordinance of the city council of Charleston exempts manufacturing companies from all municipal taxes, except taxes for school purposes. When he paid the claim of the city council, Mr. Montgomery paid the entire claim, in which was included a tax for school purposes. The Charleston Mills was certainly liable for this school tax. To this extent Mr. Montgomery is clearly entitled to be repaid. Provision for such repayment should have been made for him. It is therefore ordered that the circuit decree appealed from be modified in this respect. The cause is remanded to the circuit court, with instructions in this respect to modify its decree, and to order that, out of the funds in court, repayment be made to John H. Montgomery of so much of the claim of the city council paid by him as embraces the tax for school purposes. The costs of this court will be paid, one half by the appellant, and the other half out of funds in the hands of the receiver and special master.