## In re BALTIMORE PEARL HOMINY CO.

## GUARANTY TRUST CO. OF NEW YORK v. McKENRICK et al. (two cases).

(Circuit Court of Appeals. Fourth Circuit. April 14, 1925.)

Nos. 2207, 2227.

**1. Internal revenue ⟨⟩26—Expression of government's expectation and requirement held sufficient "demand" to create lien for tax.**

Where government reduced tentative claim for income and excess profits taxes to a formal assessment, which it agreed to settle for smaller amount, *held*, that government's expression of expectation and requirement of payment, made known to taxpayer, was in effect a demand sufficient to make tax a lien under Comp. St. § 5908; "demand" signifying a request addressed to a person that he will do some act which he is legally bound to do after request.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Demand.] .

**2. Internal revenue ⟨⟩26—Demand required to create lien for tax may be waived by taxpayer.**

Purpose of Comp. St. § 5908, in requiring demand as condition precedent to tax becoming lien, is for protection of taxpayer, and such right may be waived by taxpayer.

**3. Internal revenue ⟨⟩26—Demand required to create lien for tax held waived by taxpayer.**

Where government reduced tentative claim for income and excess profits taxes to formal assessment, which it agreed to settle for smaller amount, *held*, that transactions between revenue officers and taxpayer proved taxpayer's waiver of demand required by Comp. St. § 5908, to create lien for taxes.

**4. Bankruptcy ⟨⟩346 — Creditors advancing money to pay bankrupt's tax prior to bankruptcy held entitled to priority.**

Creditors, who paid government's tax lien on bankrupt's property before bankruptcy to prevent seizure and sale of property thereunder, under agreement with bankrupt that, if possible, they should be subrogated to government's rights of priority, *held* entitled by subrogation to same preference that government would have had but for payment.

**5. Bankruptcy ⟨⟩440—Order denying creditors' claim to priority of undisputed debt held reviewable by petition to superintend and revise and not by appeal.**

Order denying creditors' claim to priority for advances to pay bankrupt's taxes due United States before bankruptcy is reviewable by

petition to superintend and revise, and not by appeal, where amount is undisputed; question being proceeding in bankruptcy and not controversy arising in bankruptcy proceedings.

On ·Petition to Superintend and Revise and Appeal from the District Court of the United States for the District of Maryland, at Baltimore,· In Bankruptcy; Morris A. Soper, Judge.

In the matter of the Baltimore Pearl Hominy Company, bankrupt; Carl R. McKenrick and another, trustees in bankruptcy. The Guaranty Trust Company of New York petitions to superintend and revise, and also appeals from, an order of the· District Court (294 F. 921) denying its claim to priority and allowing said claim as unsecured debt. Appeal dismissed; order reversed.

George Weems Williams and James Morfit Mullen, both of Baltimore, Md., for petitioner and appellant.

Edgar Allan Poe, of Baltimore, Md. (Bartlett, Poe & Claggett and Morris A. Rome, all of Baltimore, Md., on the brief), for respondents and appellees.

Before WOODS and WADDILL, Circuit Judges, and McDOWELL, District Judge.

WOODS, Circuit Judge.· The Baltimore Pearl Hominy Company was notified on July 10, 1920, by the Commissioner of Internal Revenue of a claim for additional income and excess profits taxes for the years 1916, 1917, and 1918, amounting to $359,899.54. The letter of notification contained the following statement:

·"This is not a notice of assessment, and no payment is required in connection herewith until you receive formal notice from the collector of internal revenue for your district."

Some time between the receipt of the notice and February, 1921, the Hominy Company employed the firm of Humphreys, Day & Co., income tax specialists, to attempt to secure a reduction in the assessment. After negotiations with the government by Humphreys, Day &· Co., the claim was reduced to $72,192.34.

On February 11, 1921, five banks, including the appellant, unsecured creditors of the Hominy Company to the amount of·$233,000, became concerned because of the inability of the company to meet its obligation to the government and offered to advance a sufficient sum to compromise the tax claim for $42,000 or less and to pay Humphreys, Day & Co., their charge of $20,000. Each bank agreed to contribute to the sum advanced in·

proportion to its unsecured claim. The letter written jointly by the banks and the Hominy Company to Humphreys, Day & Co., expressing the proposition outlined, contained the following:

"It is distinctly understood that in so far as the parties hereto are able to do so, the undersigned banks shall be entitled to be subrogated to all of the rights of the government, as to a prior lien for such amounts paid to the government for said taxes, and further that we shall receive notes of the Baltimore Hominy Company covering such advances as may be made under this agreement."

On its books the assets of the Hominy Company at this time were largely in excess of its liabilities. In fact, its liabilities were very largely in excess of its assets.

A settlement with the government was arranged by Humphreys, Day & Co. for $35,000. The Union Trust Company, one of the five banks mentioned, collected from each of the banks its proportionate share of the sum advanced to cover the amount of the compromise and the counsel fee of $20,000, each bank taking the·note of the Hominy Company for the amount it contributed. On February 23, 1921, the Union Trust Company drew its check for $35,000 in favor of the Hominy Company, and that company indorsed it to the order of the Commissioner of Internal Revenue. The government's representatives refused to accept this check and returned it. On March 17, 1921, the collector of internal revenue at Baltimore received an assessment list from the Commissioner of Revenue at Washington, upon which list appeared an assessment against the Hominy Company of $72,192.34. On the next day, March 18, 1921, a new check was made out by the Union Trust Company for the amount agreed upon to the order of Joshua W. Miles, collector, dated as of February 23, 1921. This check was accepted, being acknowledged as final settlement in ,a letter from a deputy commissioner under date of March 22, 1921.

On April 4, 1921, the circuit court of the city of Baltimore appointed receivers for the Hominy Company, and on May 6, 1921, it was adjudicated a bankrupt. The unsecured debts of the corporation amounted to $501,000, and its principal assets were sold for $178,000. The referee allowed the tax payment as a preference in favor of the banks who had made it. Upon the hearing of petition of one of the trustees of the bankrupt estate, the District Judge made an order disallowing the preference and directing the re-

spective claims of the banks for the amounts advanced to be allowed only as unsecured claims. This, as we understand, is a test case to determine the rights of the banks claiming preference by way of subrogation to the government's alleged prior lien, brought to this court on petition to superintend and revise and on appeal from the decree of the District Court.

[1] We think the government had a lien for the tax on March 18, 1921, at the time of payment. The applicable statutory provision is:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto upon all property and rights to property belonging to such person: Provided, however, that such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector in the office of the clerk of the District Court of the district within which the property subject to such lien is situated. * * *" U. S. Compiled Statutes, § 5908.

The tax fixed by the government at $72,-192.34 was on the assessment list received by the collector of internal revenue on March 17, 1921. No payment had then been made, for the collector had refused the check tendered. It is true no demand in formal terms was made of the Hominy Company because of the voluntary agreement of the taxpayer to pay $35,000 which the government had agreed to accept. The statute prescribes no form and no kind of demand. The whole course of dealing shows that the government had reduced its original tentative claim of $359,899.54 to a formal assessment of $72,-192.34, that it was expecting and requiring payment of $35,000 in settlement of the assessment, and that it had made known to the Hominy Company that expectation and requirement. The expression of this expectation and requirement that the Hominy Company should pay the amount agreed upon was in effect a demand and all that was requisite to make the tax a lien. The accepted definitions support this view: "A demand signifies a request addressed to a person that he will do some act which he is legally bound to do, after the request has been made." R. & L. Law Dictionary, p. 369. In 18 C. J. 479, a "demand" is defined as: "The assertion of a legal right; the assertion of a right

to recover a sum of money; a calling for a thing due or claimed to be due; a claim; a preemptory claim to a thing of right; a request to pay; a requisition or request to do a particular thing specified under a claim of right on the part of the person requesting."

[2, 3] If, however, the transactions between the revenue officers and the Hominy Company did not amount to a demand, they clearly proved waiver by the company of demand for payment. The purpose of requiring a demand as a condition precedent to the tax becoming a lien is protection of the taxpayer; and any such right of protection may be waived by the person interested. Shutte v. Thompson, 15 Wall. 151, 21 L. Ed. 123; 6 R. C. L. p. 93; 27 R. C. L. p. 906. Surely if the Hominy Company had written to the collector expressly waiving demand and promising to pay the tax, it would be idle for the collector to go through the form of making the demand in order to create the lien. The expressed waiver would have been equivalent to the demand. Here the waiver by conduct was just as effective.

[4] Having paid the lien of the government at the request of the debtor and thus preventing the seizure and sale of the property thereunder under an agreement with the debtor that if possible they should be substituted, the banks and trust companies have a very strong equity to subrogation in the distribution of the bankrupt's assets. They were in no sense volunteers, but creditors surprised by the government's large claim for taxes in arrears. They knew the Hominy Company was in danger of failure, but they hoped that the corporation's new method of extracting sugar from corn would bring success. Under these circumstances, believing it to be advantageous to themselves and other creditors, they paid the taxes to prevent destructive enforcement of payment. In doing so we think they brought themselves clearly within the principle and rule of subrogation thus stated in Ætna Life Insurance Co. v. Middleport, 124 U. S. 534, 548, 549, 8 S. Ct. 625, 629, 31 L. Ed. 537:

"These propositions are very clearly stated in a useful monograph on the Law of Subrogation, by Henry N. Sheldon, and are well established by the authorities which he cites. The doctrine of subrogation is derived from the civil law, and 'it is said to be a legal fiction, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another. * * *

It takes place for the benefit of a person who, being himself a creditor, pays another creditor whose debt, is preferred to his by reason of privileges or mortgages, being obliged to make the payment, either as standing in the situation of a surety, or that he may remove a prior incumbrance from the property on which he relies to secure his payment. Subrogation, as a matter of right, independently of agreement, takes place only for the benefit of insurers; or of one who, being himself a creditor, has satisfied the lien of a prior creditor; or for the benefit of a purchaser who has extinguished an incumbrance upon the estate which he has purchased; or of a coobligor or surety who had paid the debt which ought, in whole or in part, to have been met by another.' Sheldon on Subrogation, §§ 2, 3. * * *

" 'The doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own.' [Sheldon on Subrogation, § 240.]"

. See, also, MacGreal v. Taylor, 167 U. S. 688, 701, 17 S. Ct. 961, 42 L. Ed. 326; 5 Pomeroy's Equity, § 2347.

It is not contended that the trustees occupied the superior position of judgment creditors without notice of the circumstances which we have held created the lien for taxes in favor of the government.

There is a labyrinth of decisions on the subject of subrogation. We shall not undertake to go through it. Our conclusion is that the government had a lien for the taxes, and when the banks and trust companies, unsecured creditors, paid it, they were entitled by subrogation to the same preference in the distribution of the assets of the bankrupt that the government would have had but for the payment. One who pays taxes may in a proper case be subrogated to the rights of the government in the distribution of the assets of a bankrupt estate. Dayton, Trustee, v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190. The question of the right of the person subrogated to the government's lien for a tax to enforce its collection by all the means available to the government as a sovereign is not before us. The other grounds upon which the claim for subrogation is made need not be considered.

The doctrine of subrogation has advanced since the decision of this court in Montgomery v. City Council of Charleston, 99 F.

825, 40 C. C. A. 108, 48 L. R. A. 503. To the extent that the opinion in that case is inconsistent with the views here expressed, we decline to follow it.

[5] The amount of the debt is not in dispute. The sole question is whether the debt is entitled to preference as a lien in the distribution of the assets of the bankrupt. Such a question is a proceeding in bankruptcy and not a controversy arising in bankruptcy proceedings. It is therefore reviewable by a petition to superintend and revise and not by appeal. Hutchinson v. Otis, 190 U. S. 552, 556, 23 S. Ct. 778, 47 L. Ed. 1179; Matter of Loving, Trustee, 224 U. S. 183, 32 S. Ct. 446, 56 L. Ed. 725; 8 Remington on Bankruptcy, §§ 3682, 3728.

It follows that the case being here properly on a petition to superintend and revise, the appeal is dismissed and the judgment of the District Court, in the matter brought up for review, is reversed.

Case No. 2207, reversed.

Case No. 2227, dismissed.