THE CHEMICAL NATIONAL BANK OF CHICAGO

*v.*

THE WORLD'S COLUMBIAN EXPOSITION.

*Opinion filed November 8, 1897.*

1. BANKS—*when acceptance of dividends on claim allowed by comptroller does not work estoppel.* A depositor in an insolvent national bank is not estopped, by accepting dividends on part of his claim allowed by the comptroller, from suing for the part disallowed, where the part disallowed was in dispute and was thrown out by the comptroller, leaving the depositor, if dissatisfied, to submit his right to that part to a court of competent jurisdiction.

2. CONTRACTS—*banks—insolvency of bank a breach of contract to carry on banking business.* Where a national bank contracts with an exposition company to carry on a branch banking business upon the exposition grounds, the subsequently declared insolvency of the bank terminates its capacity for doing business, and no further act is necessary to fix its liability for a breach of the contract.

*Chemical Nat. Bank* v. *World's Columb. Ex.* 67 Ill. App. 169, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

HIRAM T. GILBERT, for plaintiff in error:

One who takes the benefit of a judgment or decree by receiving the money awarded him, cannot afterwards prosecute an appeal or writ of error to reverse such judgment or decree. The acceptance of the money operates as a release of errors. *Thomas* v. *Negus*, 2 Gilm. 700; *Morgan* v. *Ladd*, id. 414; *Ruckman* v. *Alwood*, 44 Ill. 183; *Corwin* v. *Shoup*, 76 id. 246.

A party who accepts the benefit of a judgment or other award is estopped from questioning its validity in a collateral proceeding. *Kile* v. *Yellowhead*, 80 Ill. 208; *Pool* v. *Breese*, 114 id. 594; *Town* v. *Blackberry*, 29 id. 137.

A claim against an insolvent national bank, when allowed by the comptroller and accepted by the claimant, has the force of a judgment. *Bank* v. *Bank*, 94 U. S. 437; *White* v. *Knox*, 111 id. 784.

WALKER & EDDY, for defendant in error.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

A careful consideration of the record in this case convinces us that the opinion of the Appellate Court by Mr. Justice SHEPARD contains a fair and just statement of the facts and a carefully expressed exposition of the law applicable to those facts. That opinion is herewith appended, and adopted by this court as its opinion. It is as follows:

"This writ of error is prosecuted to reverse a judgment of $7500 recovered against the plaintiff in error and in favor of the defendant in error, upon a trial had before the court below, without a jury. The cause was tried upon an agreed statement of facts, the substance of which,

so far as necessary to be considered here, and the points urged against the judgment, we take from the brief of the plaintiff in error, as follows:

"On July 7, 1892, the plaintiff, a corporation organized for the purpose of conducting the Columbian Exposition, entered into a contract in writing with the defendant, a national banking association organized under the laws of the United States, by which the plaintiff on its part agreed to set apart and allot to the defendant certain premises in the administration building in Jackson Park, and to grant and concede to the defendant the exclusive right to conduct a general banking business and maintain safe deposit vaults upon the premises from the day the premises should be ready for occupancy during and until the close of the World's Columbian Exposition, or for so long thereafter as the plaintiff might deem expedient. The plaintiff further agreed that it would not permit any person or persons, corporation or corporations, to carry on the business of cashing drafts or issuing exchange or receiving deposits upon the exposition grounds. The defendant, on the other hand, agreed, for and in consideration of the grant of the above mentioned privileges, to pay the defendant the sum of $11,500 in installments, as follows, to-wit: $2000 February 1, 1893; $2000 March 1, 1893; $2000 April 1, 1893; $2500 May 1, 1893, and $3000 June 1, 1893. The defendant further agreed that it would commence the full operation of business under the privileges granted in the contract on or before the 15th day of April, 1893, and maintain the same continuously during the exposition. The contract contained no provision respecting the remedy that might be adopted by either party in case of a breach of any of the terms of the contract by the other.

"On April 17, 1893, defendant entered into possession of the premises mentioned in the agreement and established therein a branch office of its bank, conducting and carrying on a general banking business, receiving as de-

posits large sums of money from the plaintiff, concession-aires, exhibitors and other connected with the World's Columbian Exposition. It paid plaintiff on account of the contract $2000 February 1, 1893, $2000 March 1, 1893, and $2000 April 1, 1893, but never made any further payments.

"On May 9, 1893, defendant became insolvent, and by direction of the comptroller of the currency a bank examiner took possession of its assets and property, and its business of banking was entirely suspended and was never thereafter resumed. The premises mentioned in the contract were closed, and the deposits were removed to the main banking office of defendant in Chicago. The bank examiner retained the management of the assets and property until July 21, 1893, when one John P. Hopkins was appointed receiver by the comptroller of the currency and assumed the management thereof. Hopkins resigned January 13, 1894, and one Elie C. Tourtelot was appointed receiver in his place. Tourtelot continued to act as receiver until February 15, 1896, when he resigned, and one William C. Niblack was appointed receiver and entered upon the discharge of his duties as such, and has ever since continued to act and is still acting as receiver.

"On May 9, 1893, being the date of its suspension, plaintiff was a depositor of defendant to the amount of $29,343 deposited in its name, and to the further amount of $500 deposited in the name of plaintiff's paymaster. On the same date one Newton Wilcoxen was a depositor to the amount of more than $1000, and afterwards, on July 5, 1893, Wilcoxen drew his check on the defendant for $1000, payable to the plaintiff's order, and delivered the same to plaintiff.

"On June 23, 1893, plaintiff, through its proper officer, made demand upon the national bank examiner for the possession of the premises described in said contract. Thereupon, in pursuance of said demand, and by direction of the comptroller of the currency, the national bank

examiner surrendered up possession of the premises, and after that date defendant did not itself, or by any agent or receiver, have control of the premises or any part thereof, but on the contrary, from and after that date until the close of the World's Columbian Exposition on November 1, 1893, the plaintiff, or the Northern Trust Company of Chicago, had exclusive possession of the premises, and the Northern Trust Company, during said period, carried on in said premises a general banking business, with the express permission of the plaintiff.

"After defendant had become insolvent and suspended business, plaintiff entered into negotiations with other banks and banking institutions for the purpose of establishing a branch bank on the premises, and to this end entered into a contract with the Northern Trust Company, under which said trust company undertook and agreed to open a branch office and conduct a general banking business on said premises when the defendant should surrender possession thereof, but upon the condition that said Northern Trust Company should not be required to pay any rent for the use of said premises or for any rights or privileges that had been reserved to the defendant. Plaintiff made application to other banks and banking institutions for the prosecution of said business during the remainder of the term of said exposition, but was wholly unable to obtain any other or more favorable terms from any responsible bank than those offered by said Northern Trust Company. At the time plaintiff demanded possession of the premises from the bank examiner, the bank examiner and the directors of defendant made the claim that in consideration of such surrender of possession defendant should be repaid a portion of the amount that had theretofore been paid by it to plaintiff on account of the contract, but the plaintiff declined to recognize such claim or to repay any portion of said money.

"On September 26, 1893, plaintiff presented and filed with Hopkins, receiver, its sworn proof of claim, in and

by which it claimed a balance due it on account of its deposit, amounting to $29,343, the amount of the check delivered to it by Wilcoxen on July 5, 1893, amounting to $1000, and the amount of the deposit standing in the name of its treasurer amounting to $500, making a total of $30,-843 then claimed by the plaintiff. After this claim was filed the defendant's receiver insisted there should be deducted therefrom the sum of $2775, on the ground, as he claimed, that defendant should only be charged with such a proportion of the entire sum provided to be paid under its said contract as the time from April 17, 1893, to June 23, 1893, bore to the entire period from April 17, 1893, to November 1, 1893, which, as said receiver claimed, would amount to $3225, deducting which from the $6000 already paid, would leave the $2775 which the receiver claimed should be deducted. Subsequently the receiver expressed himself willing to allow the claim if plaintiff would first allow a credit thereon of $2100. Failing to reach an agreement with the receiver, the attorney of the plaintiff, on January 15, 1894, communicated by letter with the comptroller of the currency relative to the differences between the plaintiff and the receiver, and requesting directions to the receiver before taking further action in the matter. In answer to this letter the comptroller, on February 5, 1894, wrote to the plaintiff's attorney, in substance, that after hearing from the receiver and after having given the matter careful consideration he was of the opinion that if the receiver could effect a compromise by deducting $2100 from the claim he would be justified in doing so, but that if this could not be done the proper course for him to pursue would be to deduct from the claim the entire $6000 paid by the defendant to the plaintiff and allow it for the balance of $23,343, leaving it to the plaintiff, if dissatisfied, to adopt such course as it might see fit for the determination of the rights of the parties by a court of competent jurisdiction. Subsequently, and on February 13, 1894, plaintiff's claim was allowed to the amount

of $23,343, and the receiver issued and delivered to plaintiff a receiver's certificate therefor, which receiver's certificate was accepted by the plaintiff, and on February 15, 1894, plaintiff received from the comptroller of the currency, out of the funds of the defendant in the treasury of the United States, two dividends on the claim so allowed, aggregating the amount of $16,340.10. On April 12, 1894,—nearly two months after the acceptance by the plaintiff of these dividends,—it commenced the present suit. Subsequently, on June 26, 1894, plaintiff accepted a further dividend of $2334.30, and on August 9, 1895, a further dividend of $1167.15, making in all $19,841.55 received by plaintiff as dividends on the claim so allowed.

"Upon the foregoing facts the defendant insisted that the plaintiff was not entitled to recover: First, because by its acceptance of dividends on the claim as allowed before the commencement of its suit, plaintiff had estopped itself from asserting any further claim against the defendant, or insisting that the action of the comptroller was erroneous; second, because the amount of its claim as allowed, and upon which it had received dividends, was all the plaintiff was legally entitled to.

"The first proposition, presenting, concededly, a new question, claims serious consideration. Section 5234 of the Revised Statutes of the United States provides for the appointment by the comptroller of the currency of a receiver for an insolvent national bank. Section 5235 provides for the giving of notice by the comptroller, by advertisement, to creditors to present their claims. Section 5236 is as follows: 'From time to time after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid

over to him, shall make further dividends on all claims previously proved or adjudicated, and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held.'

"It has been held that under this section the creditor was at liberty to present his claim to the comptroller for allowance, and that in case the comptroller refused to allow the claim the creditor might bring suit thereon against the banking association in any court of competent jurisdiction, (*Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. 383,) and an attempt was made, in the same case, to procure a holding by the court that the remedy given by that section of the statute for proving claims before the comptroller of the currency excluded all other remedies. But the court refused to sustain the proposition in that behalf, on the ground that under the provisions of the section quoted it was as much the duty of the comptroller to make dividends upon claims that had been adjudicated in a court of competent jurisdiction as upon such as had been proved before him to his satisfaction, and denied that the adjudicated claims referred to in the act were only such as had been adjudicated prior to the appointment of a receiver; and accordingly held that 'claims presented by creditors may be proved before the receiver, or they may be put in suit in any court of competent jurisdiction, as a means of establishing their validity and to determine the amount owed by the association.' But that decision, it will be seen, does not meet the exact case presented by the proposition of the plaintiff in error, that by the acceptance of dividends on a claim allowed by the comptroller an estoppel arose against asserting the claim against the insolvent association for an amount in addition to what had been allowed by the comptroller.

"Looking at the stipulated facts, we see that at the date of the suspension of the bank the defendant in error was a depositor therein to the extent of $29,343 deposited

in its own name, and of $500 deposited in the name of its paymaster. Subsequently it became the holder of a check for $1000 drawn in its favor by one Wilcoxen, who was also a depositor in the bank to an amount in excess of the amount of the check. Defendant in error was, therefore, a creditor of the bank to the amount of $30,843 for funds on deposit when the bank failed, and was such creditor when it made presentation of its claim for allowance. Against the claim as presented the bank urged its counter-claim for a part of the $6000 it had paid on account of the concession it had received to occupy a banking office and do a banking business within the exposition grounds. Failing to come to an agreement as to such counter-claim, the comptroller allowed the claim of defendant in error for an amount equaling the $29,343 on deposit in its name, less the whole $6000 which had been paid by the bank on account of the concession, viz., for $23,343, and overlooked or ignored the items of $500 on deposit in the name of the paymaster of defendant in error and of $1000 for which it held the check of Wilcoxen. The exposition was, therefore, subjected to a clear deprivation of $1500 growing out of transactions entirely independent of and separate from its claim as a separate depositor in its own name, and was deprived of the $6000 which had been paid to it by the bank on account of rent and the concession, and it was for these sums that the defendant in error sued, and obtained the adjudication in its favor that is brought up for review.

"Whatever the rule may be concerning the binding effect upon one of an election made by him to accept the benefit of a judgment or award in his favor upon an entire claim asserted by him, evidenced by his acceptance of subsequent dividends thereon or of payment thereof, still we must regard the suit or claim for this $7500 as being so far separable from and independent of the claim of defendant in error as a general depositor of the bank as to permit a recovery in the suit, notwithstanding,

either before or pending such suit, dividends upon the claim as allowed by the comptroller were received.  A fair construction, also, of the letter of the comptroller of February 5, 1894, to the attorney of the defendant in error, in which he says that he is of the opinion that if the receiver could effect a compromise and adjustment of the controversy by deducting $2100 he would be justified in so doing, and adds: 'If, however, this cannot be done, the proper course for him to pursue will be for him to deduct from the claim the entire $6000 paid by the bank to the exposition, and allow it for the balance of $23,343, leaving to the exposition, if dissatisfied, to adopt such course as it may see fit for the determination of the rights of the parties by a court of competent jurisdiction,' coupled with the action taken by defendant in error in accepting the course indicated by the comptroller, seems to be very close to a stipulation that defendant in error should abide by the decision of the comptroller to the extent of $23,343 and sue for the rest, if dissatisfied, and it is conceded by counsel for plaintiff in error that it would be competent to make such a stipulation.  But we do not regard it to be necessary to hold that a stipulation to such effect was made.  It is enough that the matters involved in the suit do not appear to have been passed upon by the comptroller in making the allowance ordered by him.  He simply ordered that everything in dispute should be thrown out of consideration, leaving all such disputes to be settled by suit.  Under such circumstances we do not regard the defendant in error as being estopped by anything it has done from the recovery it secured.

"The cases of *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. Rep. 372, decided by the Circuit Court of Appeals for the Sixth Federal Circuit, and *White* v. *Knox*, 111 U. S. 784, are cases which, though not in precise point, appear by analogy to establish that estoppel will not operate in a case like the present.  But we take time only to refer to them.

"Upon the second point, which involves the right of the defendant in error to have the $6000 which had been paid to it by the bank on account of rent and concession, it is urged that there was no lawful rescission by the defendant in error of its contract with the bank, and, because there was not, that defendant in error could not repudiate the contract and also retain the benefits it had received thereunder. We will not follow out the argument of the plaintiff in error upon that point, but content ourselves with holding that from a full inspection of the stipulated facts it appears that there was an admitted breach of the contract by the bank to such an extent as to put an end to its further execution by the bank, and that there had occurred a total disability of the bank to perform the objects for which the contract was entered into. Upon the insolvency of the bank being declared its capacity to do business was at an end and the contractual relation between the parties ceased, except for purposes of an action for damages for breach of contract. (*White* v. *Knox, supra; Lake Shore and Michigan Southern Railway Co.* v. *Richards*, 152 Ill. 59.) That the defendant in error suffered damages was amply shown by the stipulation that it was thereafter unable to procure a bank capable of doing the business contemplated by the contract, at any rent whatever to be paid.

"Under the agreed facts it would seem that there can be no doubt but the defendant in error had the right to take possession of the premises after the total breach by the bank of its contract, as it did do under the direction of the comptroller, without having deducted from its claim what had been paid to it for rent and concession.

"Upon the whole record the judgment should be affirmed, and it is so ordered."

The judgment of the Appellate Court affirming the judgment of the circuit court of Cook county was proper, and it is therefore affirmed.                    *Judgment affirmed.*