JAMES A. EVERETT and F. L. GLADSTONE v. J. G. STATON, RECEIVER OF PEOPLES BANK OF WILLIAMSTON.

(Filed 29 September, 1926.)

1. **Banks and Banking—Corporations—Contracts — Shareholders — Officers—Consideration.**

While personal dealings between the shareholders and officers of the bank will be carefully scrutinized, they will be upheld when the transactions are made in good faith and the bank has been benefited thereby in the usual course of its authorized banking transactions.

2. **Same—Subrogation—Receivers—Debtor and Creditor.**

Where a stockholder and director of a bank have in good faith loaned their Liberty Bonds to it to enable it to get an extension of the time of payment of its note it had given to another bank, with collaterals hypothecated for its payment, and the creditor bank has sold these bonds with some of the other collaterals and discharged the extension note, and has turned the balance of the collaterals hypothecated to the receiver of the borrowing bank, which has since become insolvent: *Held*, to the extent of the unused collaterals, the officials who have so loaned their bonds are entitled to legal subrogation as against the claims of the other or general creditors of the bank represented by the receiver.

3. **Same—Insolvency—Evidence.**

Under the facts of this case: *Held*, the mere fact that the borrowing bank afterwards went into the hands of a receiver did not affect the *bona fides* of the stockholder and director who had loaned it their individual bonds in order to enable it to obtain an extension of the time of payment of a note for money borrowed by it from another bank.

4. **Same—Legal Subrogation—Definition.**

Legal subrogation is defined to be "an equity called into existence for the purpose of enabling a party, secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies, which the creditors may hold as against the principal debtor, and by which the party paying may be made whole."

**5. Same — Debtor and Creditor — Unsecured Claims — Distribution of Assets.**

> While a stockholder or director of a bank may be entitled to subrogation to the rights of their bank to whom they have loaned their personal collateral to enable it to obtain an extension of time of payment on a note it had given to another bank, to the extent of the borrowing bank's unexhausted collateral it pledged to the note, as to the other or general collateral of the borrowing bank, since becoming insolvent and in a receiver's hands, their relation is that of general creditors, and they are only entitled to the proceeds in its distribution among the general or unsecured creditors of the insolvent bank.

APPEAL by both plaintiffs and defendants from *Calvert, J.,* at March Term, 1926, of MARTIN. No error.

On 21 August, 1920, plaintiffs loaned to the Peoples Bank of Williamston, N. C., Liberty Bonds of the par value of $50,850, to be hypothecated by said bank with the Coal and Iron Bank of New York, as additional security for its indebtedness to said Coal and Iron Bank; the Peoples Bank had theretofore deposited with said Coal and Iron Bank as collateral security for said indebtedness, securities, owned by it, of the aggregate par value of $114,076.44; in June, 1922, the Peoples Bank was declared insolvent, and defendant, J. G. Staton, was duly appointed as its receiver; upon default in the payment of the indebtedness to it of the Peoples Bank, the Coal and Iron Bank sold said Liberty Bonds, and applied the proceeds of said sales as a payment on said indebtedness; the Coal and Iron Bank thereafter realized from the securities owned by the Peoples Bank, and held by it as security for said indebtedness, a sum sufficient to pay off and fully discharge the balance due on said indebtedness, after the application of the proceeds of the sale of the Liberty Bonds; it then delivered to defendant receiver all said securities, remaining in its hands, the par value of said securities so delivered to the receiver being $49,506.43; the said receiver now holds said securities, or the proceeds of their collection, or sale.

Since the sales of the said Liberty Bonds by the Coal and Iron Bank, each plaintiff has realized from certain collaterals and securities deposited with him at the time of the loan of said Liberty Bonds, as security for their return, large sums of money, which he has in hand to indemnify him on account of the loss he has sustained from the failure of the Peoples Bank to return said Liberty Bonds, because of their sale by the Coal and Iron Bank; said sums of money are not sufficient, however, to fully reimburse plaintiffs for their loss. Each plaintiff now has a claim against the receiver for the amount due him on account of his loss sustained by the sale of said Liberty Bonds. Ob-

jection as to misjoinder of parties or cause of action is expressly waived by defendant in his brief filed in this Court.

Upon the foregoing facts, admitted in the pleadings, and found by the jury, judgment was rendered, decreeing that plaintiffs have an equitable right and title to the collateral returned to the defendant receiver of the Coal and Iron Bank, or to the proceeds of the same now in his hands; and that plaintiffs are entitled to be paid out of said collaterals or proceeds, prior to payment of the general creditors of the Peoples Bank, in the same ratio as the amounts received by the Coal and Iron Bank from the sale of their Liberty Bonds, bear to each other. Defendants excepted to said judgment, for that it adjudges that plaintiffs are entitled to a preference and priority in payment over general creditors of the Peoples Bank with respect to said collaterals and proceeds thereof.

Plaintiffs moved for judgment that the amount found to be due to each of plaintiffs, after an accounting in accordance with the judgment aforesaid, be declared a preferred claim against the assets of the bank, now or hereafter in the hands of the receiver, and that the receiver be directed to pay said amounts, out of the general assets of the bank, prior to payment of any dividend to general creditors out of said assets. This motion was denied, and plaintiffs excepted.

Both plaintiffs and defendant appealed to the Supreme Court.

*Stubbs & Stubbs, B. A. Critcher, Ward & Grimes for plaintiffs.*
*Dunning & Moore, Stephen C. Bragaw for defendant.*

CONNOR, J. The fact that plaintiff, F. L. Gladstone, was a stockholder, and plaintiff, James A. Everett, was a stockholder and director of the Peoples Bank at the time they loaned their Liberty Bonds to said bank, to be hypothecated with the Coal and Iron Bank, a creditor of the Peoples Bank, as security, upon the facts on this record, does not affect their rights, if any, to relief, under the equitable principle of subrogation invoked by them in this action. The transaction was not for their benefit, but for the benefit of the bank. The good faith, which the law requires in transactions between stockholders and directors and the corporation, is apparent on the admitted facts; indeed, it is not questioned on the record. Plaintiffs took no advantage of their relations to the bank, to secure personal benefits; rather it must be said that the bank, by reason of such relations, induced plaintiffs to loan their Liberty Bonds to it for its benefit. The mere fact that this bank, in August, 1920, desired to borrow Liberty Bonds to be used as collateral security for its indebtedness held by a New York bank did not indicate that the bank was then insolvent; the bank continued business until June, 1922; it was then declared insolvent.

"There is nothing to hinder a director from loaning money and taking liens on the corporate property to secure him. If he can do that, he can lend his credit by indorsing its paper in order to obtain needed cash, and secure himself upon the corporation's property. Such transactions are looked upon with suspicion, and strict proof of their *bona fides* is required." *Caldwell v. Robinson,* 179 N. C., 518; *Wall v. Rothrock,* 171 N. C., 388. We can perceive no reason why this principle should not be applied to enable a stockholder or director, who, in good faith, loans his securities to the corporation, to be hypothecated by the corporation as additional security for its then existing indebtedness, secured by collaterals owned by the corporation, and then in the hands of the creditor, to call to his aid the equitable principle of subrogation, with respect to the collaterals, owned by the corporation and not exhausted by the creditor, who has however applied the securities of the stockholder or director to the payment, in full or *pro tanto,* of the corporation's debt, thus releasing the collaterals of the corporation. By means of the loan of plaintiffs' bonds, the bank secured what it desired, to wit, an extension of the date on which its indebtedness became due.

The Coal and Iron Bank held as security for the indebtedness due to it by the Peoples Bank, first, securities owned by said Peoples Bank; second, Liberty Bonds, owned by plaintiffs, but loaned to the Peoples Bank, to be hypothecated with the Coal and Iron Bank, as additional security for said indebtedness; the Coal and Iron Bank, upon default in the payment of the indebtedness, applied, first, the proceeds of the sale of the Liberty Bonds, as a payment on the indebtedness; next, a sufficient sum derived from the collaterals owned by the Peoples Bank, to discharge the debt, leaving a large amount of said collaterals, unexhausted. This resulted from the application of the Liberty Bonds to said indebtedness. It is clear that plaintiffs are entitled to the unexhausted collaterals, returned to the receiver, upon the just and well-settled principle of legal subrogation, which has been defined as "an equity called into existence for the purpose of enabling a party, secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditors may hold as against the principal debtor and by the use of which the party paying may thus be made whole." Bispham's Equity (6 ed.), secs. 335 and 336; *Whitford v. Lane,* 190 N. C., 343; *Joyner v. Reflector Co.,* 176 N. C., 274; *Brown v. Harding,* 170 N. C., 253. There is no error upon defendant's appeal.

Nor is there error upon plaintiffs' appeal. It is true that the bank agreed to return the Liberty Bonds to plaintiffs; but it was also agreed by plaintiffs that these bonds should be hypothecated with the Coal and Iron Bank, and that said Coal and Iron Bank should have the power to sell them, upon default in the payment of the amount due it by the

Peoples Bank. We are unable to perceive upon what principle it can be successfully contended that plaintiffs are entitled to priority in the payment of their claims out of the general assets of the bank. With respect to said claims, the relation between plaintiffs and the bank was that of creditor and debtor, and plaintiffs can only share in the assets of the bank *pro rata* with general creditors, after they have received the proceeds of the sale or collection of the specific securities to which they are entitled, by subrogation, in accordance with the judgment rendered. The principle upheld and applied in *Corporation Commission v. Bank,* 137 N. C., 697, is not for the benefit of the bank, but for the protection of general creditors, upon the principle that equality is equity. Plaintiffs' assignment of error cannot be sustained. The judgment is affirmed. There is

No error.