## BARTHOLF v. MILLETT.

Circuit Court of Appeals, Eighth Circuit.
October 29, 1927.

No. 7799.

Banks and banking ⬅══288—Trust fund misapplied by insolvent national bank to reduce lien on its own property gave rise to preferred claim.

Complainant went to pay two notes which he owed to a national bank, taking a check in his favor for a larger amount, which he delivered to the bank. The bank had rediscounted his notes and did not then have them in its possession, but gave him a receipt for their payment and a cashier's check for the balance due him. It sent the check to a correspondent, to which it owed a large overdraft, for collection and credit; and it was so applied. The bank was closed the next day and its receiver

paid the balance of the overdraft receiving back collateral to a much larger amount. *Held,* that the bank took complainant's money as his agent in trust for payment of his notes, which trust it violated by diverting the money to its own use; that the trust fund went into the collateral notes redeemed by the receiver by reducing the overdraft which he was required to pay, and that complainant was entitled to its allowance as a preferred claim against the receivership assets.

Appeal from the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Suit in equity by Katherine S. Bartholf, executrix, substituted as complainant for Mark Bartholf, deceased, against D. A. Millett, receiver of the Drovers' National Bank. Decree for defendant, and complainant appeals. Reversed, with directions.

Walter M. Appel, of Denver, Colo. (Ira C. Rothgerber, of Denver, Colo., on the brief), for appellant.

Horace Phelps, of Denver, Colo., for appellee.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. The trial court decided that Mark Bartholf did not have a right of preference to payment of his claim for $9,940.79 out of the assets of the Drovers' National Bank in the hands of its receiver, who was appointed because of the bank's insolvency; and that is the issue presented on this appeal. After the suit was instituted Bartholf died, and it has been revived in the name of his personal representative.

The facts on which the issue must be determined are these:

On December 16, 1925, Bartholf went to the Drovers' National Bank of Denver for the purpose of paying two promissory notes which he had previously given and which, with interest, then amounted to $9,940.79. Both of the notes had been rediscounted and were not then in the possession of the bank. Bartholf had with him a check drawn in his favor for $12,842.05 by Prey Brothers on the Colorado National Bank. The assistant cashier received the check for $12,842.05 and in exchange therefor gave Bartholf a cashier's check on the Drovers' for $2,901.26, and for the remainder of the amount stated in Prey Brothers' check issued to Bartholf this receipt:

"12/16/1925.

"Received of Mark Bartholf ninety-nine hundred forty and 79/100 dollars in payment of notes for 7,288/84 and 2,479/85 and int. to Dec. 16, 1925 @ 8%.

"The Drovers' National Bank,
"Denver, Colo.

"M. B. Myerson, Asst. Csh."

On receiving Prey Brothers' check from Bartholf the Drovers' National Bank delivered it to the Denver National Bank for collection and credit to the Drovers.' The Drovers' National had an open deposit and checking account with the Denver National. That account was overdrawn in a large amount at that time, greatly in excess of the amount of Prey Brothers' check. Early in October preceding the Denver National had required the Drovers' National to give it security for overdrafts in the Drovers' account, and for that purpose the Drovers' National had pledged with the Denver National notes of the face value of about $157,000, which the latter had selected out of the assets of the Drovers.' About 11 o'clock in the forenoon of December 17, 1925, the day after the transaction with Bartholf, the Comptroller of the Currency caused the Drovers' National to be closed, and later appointed appellee as its receiver. At that time its overdraft with the Denver National was approximately $100,000. The Denver National collected in due course Prey Brothers' check to Bartholf for $12,842.05 from the Colorado National and applied it as a credit to the Drovers' National on its overdraft. The receiver did not settle with the Denver National until December 18, 1926. Prior thereto the Denver National had realized on some of the pledged notes and credited the Drovers' overdraft as payments were made. On the date named the receiver paid the balance of the overdraft, about $55,000, and received from the Denver National the remainder of the collateral which it held, of the face value of about $102,000.

It is, of course, obvious that the receiver paid $12,842.05 less than he would have paid in discharge of the pledgee's lien, if Bartholf's check had not been applied on the Drovers' overdraft at the Denver National. The receiver allowed to Bartholf the $2,901.26 as a general claim, but refused to make any allowance to him for $9,940.79 unless Bartholf would present that as a general claim also, which he refused to do; and thereupon this suit was brought for the latter amount as a preference.

Plainly, the $9,940.79 was entrusted to the Drovers' as Bartholf's agent for a special purpose, it was misapplied by the agent and the trust violated; but counsel for appellee says the trial court did not err, be-

cause Bartholf's money did not come to the hands of the receiver nor augment the assets of the insolvent. We think the facts refute this contention. The Drovers' National diverted Bartholf's $9,940.79 and applied it in discharge of the pledgee's lien on its property. The receiver accepted the benefit of that diversion and payment when he settled with the pledgee, paid off the balance due on that lien and took over as assets of the insolvent the remaining pledged notes. The trust fund was thus shown to have gone into assets which came to the receiver and increased those assets to the amount claimed. We may say, as the Supreme Court said in MacGreal v. Taylor, 167 U. S. 688, 701, 17 S. Ct. 961, 42 L. Ed. 326, on facts not unlike these in principle: To say that Bartholf's money did not come into the hands of the receiver, when it had been used by the insolvent in payment of a lien on its property, and notwithstanding said property is held for administration as assets of the insolvent, is to sacrifice substance to form.

As we view the facts, they constitute clear proof that the $9,940.79 went into the notes which the receiver took back from the Denver National, and the evidence supports the inference that those notes greatly exceeded in value that sum and the $55,000 paid by the receiver when they were returned to him. Thus traced into the notes the trust fund increased in that way the insolvent estate to the full extent of Bartholf's claim. We cannot see that this conclusion is at all in conflict with what we have held in Farmers' National Bank v. Pribble, 15 F.(2d) 175, Larabee Flour Mills v. First National Bank et al., 13 F.(2d) 330, Mechanics & Metals National Bank v. Buchanan, 12 F.(2d) 891, State Bank of Winfield v. Alva Security Bank, 232 F. 847, Beard v. Independent District of Pella City, 88 F. 375; and Empire State Surety Co. v. Carroll County, 194 F. 593. Indeed, the facts in many of those cases have no semblance to the facts here. The Empire State Surety Co. Case does consider the requisite proof in establishing a preference right of a creditor of an insolvent estate where such claimant is the beneficiary of a trust fund that came into the possession of the insolvent; and it was said that it is not sufficient to prove that the trust property or its proceeds went into the general assets

of the insolvent estate and increased the amount and value thereof which came into the hands of the receiver, but that it must be proved "that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver, and then the claim can be sustained to that fund or property only and only to the extent that the trust property or its proceeds went into it." The later cases in this circuit have adhered to the rule there announced. A learned and able discussion of the principles to be applied in such a case by the late Judge Philips may be found in Metropolitan National Bank v. Campbell Com. Co. (C. C.) 77 F. 705. See also Mechem on Agency (2d Ed.) § 1350. The latest case in this circuit applying the rule is Dudley v. Richards, 18 F.(2d) 876, which in some respects is not unlike the instant case. There the insolvent bank took negotiable bonds which had been left with it for safe-keeping and without leave of the owner pledged them with other securities to the state as a depositor of public funds with it as security for the return of the funds so deposited. On failure of the bank the securities so pledged with the depositor were sold and sufficient of the proceeds of the sale applied in payment of the depositor's account. We held that the owner of the bonds had a preference right in the proceeds of the sale after the obligation to the depositor had been discharged. In other words, the trust property was followed into the amount realized at the sale of the securities.

Appellant concedes that when Bartholf accepted the Drovers' cashier's check for $2,-901.26 he became its general creditor to that amount, and that the only part of Prey Brothers' check that can appropriately be said to be a trust fund is the remaining $9,-940.79 which, as appears from the Drovers' receipt, was to be used for a special purpose and was then diverted in the manner above stated. We think the court erred in denying a preference to Bartholf for that amount, and the decree is reversed with directions to set it aside and to enter a decree allowing the claim with interest as a preference claim to be paid out of the assets of the insolvent estate in preference to the claims of general creditors.

It is so ordered.