### GWYNN v. SPURWAY.

District Court, S. D. Iowa, S. D.   July 26, 1928.

No. 4057.

L. H. Mattox, of Shenandoah, Iowa, for plaintiff.

Ferguson & Ferguson, of Shenandoah, Iowa, for defendant.

DEWEY, District Judge. Plaintiff herein has filed a bill of complaint in equity, asking that the assets in the hands of the receiver be impressed with a trust in his favor to the amount of his claim of $1,000 and interest, and that he have an order directing the receiver to pay such sum, as a trust fund, to him. The facts are stipulated and agreed, so that the question presented is one of law.

On the 31st day of December, 1918, plaintiff left with the First National Bank of Shenandoah, Iowa, a United States Liberty bond, for which the bank issued and delivered a receipt in words and figures as follows:

U. S. Bond Certificate of Deposit.
"No. 1230.

Shenandoah, Iowa, Dec. 31, 1918.

"This certifies that T. J. Gwynn has deposited with the First National Bank 72–184 one thousand dollars (par value) in U. S. Fourth Liberty Loan 4¼ per cent. coupon bonds, returnable to him or to his order at this bank on surrender of this certificate properly indorsed.

"Interest payable hereon in lieu of the interest on such bonds according to the terms and tenor of such bonds. All matured coupons to this date having been detached.

"Interest due April 15th and October 15th each year.

"D. B. Miller, A. Cashier."

Other United States Liberty Loan bonds were deposited with the bank from time to time, and similar receipts issued by the bank therefor. These bonds were later pledged to the Federal Reserve Bank at Chicago, Ill., to secure the payment of debts evidenced by promissory notes executed by said bank and payable to the Federal Reserve Bank of Chicago, for money borrowed. On the 13th day of May, 1926, the First National Bank of Shenandoah, Iowa, was found to be insolvent, and the defendant receiver was so ap-

pointed on said date by the United States Comptroller of the Currency, and he has since then acted as such receiver.

At the time of the suspension of the First National Bank it was indebted to the Federal Reserve Bank on two accounts, one in the sum of $66,500, and on another account known as "rediscount liability," in the principal sum of $234,652.91. Plaintiff's bond, together with other bonds for which like receipts had been issued, aggregating the principal sum of $54,050, was pledged to said Federal Reserve Bank to secure the indebtedness, the principal sum of which was the $66,500.

After the appointment of the receiver, and on or about the 30th day of July, 1926, the Federal Reserve Bank, acting under the agreement and pledge which had been given by the First National Bank of Shenandoah, Iowa, applied the pledged collateral, including plaintiff's bond, on the $66,500 indebtedness, or rather to that indebtedness as at that time said assets, including said bonds, with interest and increase in value thereof, amounted to $68,180.15, and said indebtedness at that time, with interest, aggregated $66,481.65, leaving a balance at that time in favor of the defendant receiver of the First National Bank of Shenandoah, Iowa, in the sum of $1,698.50.

■ There is no doubt, despite the defendant receiver's argument to the contrary, that, in pledging said bond as security for its indebtedness to the Federal Reserve Bank of Chicago, the First National Bank acted without authority and unlawfully, and, as far as the principal sum of said bond was concerned, a trust was created in favor of the plaintiff by said wrongful act.

The receipt executed for said bond by said bank expressly stated that said bond would be returned to plaintiff, or his order, at any time he so demanded, and the intention of the parties that this bond was to be kept for the plaintiff, and not used by the bank as its own property, is manifested by the agreement contained in the receipt, showing a distinction between the right of property in the bond itself and the interest, the receipt stating in effect that the bank should have the right to cash the interest coupons, and authority was given to the bank to convert the interest on said bonds, and the bank, therefore, cannot be held to have done anything unlawful, so far as the pledging of the interest on said bond was concerned. But the bond itself, having been left for safekeeping, and having been wrongfully used as a pledge for the indebtedness of the bank,

without authority, did not become the property of the bank, nor did it have any right or authority to convert it, or use it for its own purposes. Leach v. Sanborn State Bank, 203 Iowa, 401, 212 N. W. 694, 51 A. L. R. 900.

■ By the above statement of facts, it clearly appears that the plaintiff, thus far, has traced the funds received for said bond, and had said sum of $1,698.50, being the excess of the pledged security from or over the $66,500 indebtedness, been paid to and come into the hands of the receiver, the same would be and constitute a trust fund, from which the plaintiff would be entitled to have impressed with his trust the principal sum of his bond of $1,000. But it also appears from the following facts that this sum of $1,698.50 was not paid by the Federal Reserve Bank of Chicago to said receiver. As I have stated above, there was at that time another indebtedness of $234,652.91, and this balance of $1,698.50 was by the Federal Reserve Bank at that time applied to reduce such indebtedness.

However, as security for said principal sum of $234,652.91, which indebtedness was for liability on paper sold to said Federal Reserve Bank, and known as "rediscount liability," there was, in addition to the value of the rediscount paper itself, collateral security owned by said First National Bank of Shenandoah, Iowa, of an estimated value of $80,000. While it does not appear in the agreed statement of facts, it is alleged in plaintiff's bill of complaint, in paragraph 8 thereof, and subsequently admitted by the defendant's answer, that the Federal Reserve Bank, prior to and after the appointment of the receiver for said First National Bank, collected on said rediscounts held by it, and on the collateral to the said rediscounts held by it, in excess of this total indebtedness of $234,652.91, something over $25,000, and in addition thereto turned back some rediscount paper, making a total refund to the receiver from the Federal Reserve Bank of about $35,000.

Upon this state of facts it clearly appears that, under the authority of Dudley v. Richards (C. C. A.) 18 F.(2d) 876, and Bartholf v. Millett (C. C. A.) 22 F.(2d) 538, the payment of $1,698.50 reduced the indebtedness held by the Federal Reserve Bank at that time in that amount, and thereby increased and augmented the amount and value of the pledged collateral and rediscount paper which was returned by the Federal Reserve Bank to the defendant receiver in said amount, and it can hardly be denied

that the plaintiff has not only established that there was a trust created by the wrongful use, pledge, and sale of his $1,000 bond by the action and agreement of the First National Bank of Shenandoah, Iowa, but that he has traced the proceeds from said trust fund (1) into the $1,698.50, as an excess of the pledged security over the indebtedness of $66,500; and (2) he has further traced said sum into a special fund, which was used to pay the additional indebtedness, and thereby augmented the amount that was finally returned into the hands of the receiver in the said amount of $1,698.50.

As stated in Bartholf v. Millett, supra: "The receiver accepted the benefit of that diversion and payment when he settled with the pledgee, paid off the balance due on that lien, and took over as assets of the insolvent the remaining pledged notes. The trust fund was thus shown to have gone into assets which came to the receiver, and increased those assets to the amount claimed."

It is stated in the agreed statement of facts that bonds other than that of the plaintiff were without authority used by the bank as a pledge for its indebtedness. It must necessarily be determined whether others than the plaintiff are entitled to participate in this fund of $1,698.50, which the court finds is impressed with a trust in favor of this plaintiff in the sum of $1,000. After this has been ascertained, this sum should be awarded pro rata to those to whom it rightfully belongs.

■ Another defense, as against plaintiff's claim, raised by the receiver, is that the plaintiff, having filed a claim as a general creditor and afterwards received and accepted dividends as such, has waived his right to now claim that he is entitled to a preference in the assets, and is estopped thereby. The facts upon which this defense is predicated, are that on the 15th day of July, 1926, the plaintiff filed a claim as a general unsecured creditor of said bank for said bond, and on the 18th day of December, 1926, filed an amendment to his general claim, asking that the same be allowed as a preferred claim against the receiver, and that this application for a preferred claim was later disallowed and declined by the receiver, who allowed his claim as a general unsecured claim against him. On the 9th day of July, 1927, the receiver paid to the plaintiff a 10 per cent. dividend on his claim, and on the 3d day of September, 1927, paid a dividend in a like amount, and that said dividends were received and accepted by the plaintiff herein, as dividends on a general unsecured claim.

It will be noted that the dividends paid to and accepted by the plaintiff occurred after he had changed his claim to one asking for a preference. While this question is not without difficulty, the court is satisfied that the positions taken by the plaintiff as to his claims are not so inconsistent as to deny him the relief sought under this bill of complaint. He had a general claim against the estate, as well as a right to ask for a preferred allowance. No facts appear to show that the defendant receiver has been injured or placed in a different position, by the change in claims of plaintiff, that would warrant an estoppel as against the plaintiff, and the court is satisfied, by the reasoning and suggestions in the cases cited by the plaintiff on this question, that there has been no waiver or estoppel. McLeod v. Evans, 66 Wis. 401, 28 N. W. 173, 214, 57 Am. Rep. 287; In re Knapp, 101 Iowa, 488, 70 N. W. 626; Chemical National Bank v. Columbia Expo., 170 Ill. 82, 48 N. E. 331; 7 C. J. 847, § 843.

After the respective rights of creditors in and to said sum of $1,698.50 have been ascertained, the plaintiff is entitled to have his pro rata share established, and said sum to be so established and recognized and certified to the Comptroller, to be paid in due course of administration, and, unless the same is done by the receiver, plaintiff may apply for an order of this court therefor.

■ All of this, however, is subject to any payment or payments which have been received by the plaintiff as a dividend or dividends, and is not to affect the right of the plaintiff to have established his claim against the estate for any interest due on said bond, or any balance remaining after exhausting the trust fund as a general claim against the defendant receiver. Costs to be taxed to defendant. To all of which an exception is allowed to each party.