### MARCHANT v. SUMMERS.

### No. 3894.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1935.

878

NORTHCOTT, Circuit Judge, dissenting.

———◆———

W. C. Wolfe, of Orangeburg, S. C., for appellant.

Carroll E. Summers, of Orangeburg, S. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a decree which directed the receiver of a failed national bank to turn over to plaintiff four $100 Liberty Loan bonds, together with the proceeds of certain interest coupons, in the hands of the receiver. It appears that in 1919 plaintiff deposited the bonds with the bank for safe-keeping under an agreement which required the bank to collect the interest thereon and deposit it to plaintiff's account. The agreement, which was in writing, after reciting the deposit of the bonds with the bank, set forth the terms under which they were to be held by it, as follows:

"This certificate is non-transferable and therefore non-negotiable. The bank agrees to collect the semi-annual interest on said bonds when due and credit to the owners account with this bank.

"This bank reserves the privilege of using the bonds represented by this certificate in such a manner and for such purposes as it may choose and requires five (5) days notice when the return of the above amount of bonds is desired—not necessarily the identical bonds, but bonds of the same issue, same denomination and value.

"This bank makes no charge for this service but reserves the right to return the above amount of bonds to the owner after reasonable notice and in case of this certificate being lost or destroyed the bank reserves the right to require the owner to publish proper public notice thereof before the issuing of a duplicate or the delivery of the bonds."

The bank held the bonds, collecting the interest coupons and crediting same to plaintiff, until November 24, 1931, or January 12, 1932. On one or the other of these dates it pledged them along with bonds belonging to other customers, totaling $17,000, to secure deposits which had been made with it by the Postal Savings Bank. It had already deposited bonds of its own to secure this postal savings account; but upon being called upon for additional security, it pledged two lots of bonds belonging to its customers, one on November 24, 1931, and the other on January 12, 1932, among which were the bonds of plaintiff. These bonds of customers were not credited to them or in any way entered upon the books of the bank until they were pledged to secure the postal savings account. They were then listed among the bank's resources as "bonds owned by customers" and among its liabilities as "bonds borrowed from customers."

After the bank was placed in receivership, the amount due the Postal Savings Bank was paid from the proceeds of the sale of the bonds belonging to the bank, and the bonds of customers which it had pledged, or bonds of like character and amount, were returned to its receiver and are now held by him. The order appealed from directed the receiver to turn over four of these, together with the proceeds of the interest coupons which he had collected, to the plaintiff. The receiver contends (1) that the effect of the deposit of the bonds was to create a mere debtor and creditor relationship between the bank and plaintiff, and (2) that, in any event, plain-

tiff is not entitled to the return of bonds after the pledge to secure the postal savings account, as the bonds returned to the receiver are not shown to be the identical bonds of plaintiff. We do not think that there is merit in either of these contentions.

It is well settled, of course, that where a bank takes bonds of a customer as security or for safe-keeping, the relationship established is that of bailor and bailee, and not that of debtor and creditor, which would arise upon a sale and purchase of the bonds. Leach v. Sanborn State Bank, 203 Iowa, 401, 212 N. W. 694, 51 A. L. R. 900, 905; Andrew v. Citizens' State Bank, 203 Iowa, 345, 212 N. W. 745, 51 A. L. R. 906, 909; In re Farmers' & Merchants' Sav. Bank, 202 Iowa, 859, 211 N. W. 532, 51 A. L. R. 910, 912; Kincheloe v. Bank of Hardinsburg, 246 Ky. 1, 54 S.W.(2d) 384, 84 A. L. R. 1530; Gwynn v. Spurway (D. C.) 28 F.(2d) 37; notes in 51 A. L. R. 914, and 84 A. L. R. 1534, and cases there cited.

And we do not think that the character of the transaction here involved was changed from a bailment to a sale merely because the bank was given the right to use for its own purposes the bonds deposited with it. The agreement provided that if it should avail itself of this privilege, it should be bound, not to pay for them in cash, but to return others of the same issue, denomination, and value, which shows that a sale to the bank giving rise to the relationship of debtor and creditor was not contemplated, but merely a power to make use of the bailed property. The case is not unlike that of Walter A. Wood Mowing & Reaping Mach. Co. v. Vanstory (C. C. A. 4th) 171 F. 375, wherein it was held by this court that an option on the part of a bailee to purchase bailed property did not convert the bailment into a sale and vest title in the bailee.

When the bank pledged the bonds of plaintiff as security for the postal savings account, it was acting within the power vested in it by the contract with plaintiff; and there can be little doubt that, if the bonds had been required to make that account good, they could have been used for that purpose and plaintiff would have had merely a nonpreferential claim for their value, as was held in Kohler v. Spurway (D. C.) 28 F.(2d) 36, upon which the receiver relies. Where, however, the bonds were not sold under the pledge, but were restored to the receiver, there is no reason why the rights of the owner therein should not be recognized, just as though they had never been pledged under the power. Andrew v. Citizens' State Bank, supra.

And we see nothing in the argument that title to the bonds passed absolutely to the bank so that the relationship of debtor and creditor was established, as in case of a sale, merely because the contract provided that the identical bonds need not be returned to plaintiff, but merely bonds of the same issue, denomination, and value. It is true that ordinarily it is said that, where there is no obligation to restore the specific article, but the bailee is at liberty to return either money or other goods of equal value, "there is a transmutation of property, and the obligation created is a debt and not a bailment." 6 C. J. 1086; Jones on Bailments (2d Ed.) 102. But as shown by Prof. Williston (Sales, § 338), this statement of the rule cannot be literally accepted; and certainly it admits of many exceptions. See 6 C. J. 1091–1096, and cases cited. It has no application here, where the surrounding circumstances clearly show that a bailment and not a sale was contemplated, and where the provision for the return of other bonds of equal value was evidently intended to prevent a settlement for the bonds at their value in money in case the bank should use them under the power given in the contract under which they were deposited. It has been held that, where the option to return other articles of the same kind applies in case of a loss for which the bailee is liable, the bailment is not converted thereby into a sale. Smith v. Niles, 20 Vt. 315, 49 Am. Dec. 782, 783; 6 C. J. 1087. And there is just as much reason in upholding rights of the bailor in a case such as this.

It is true that the provision permitting the return of bonds of like kind instead of the identical bonds deposited applies generally, and not merely to cases where the bank has exercised the power to use the bonds deposited for its own purposes; but we think that the effect of this provision is, not to transmute what was intended as a bailment into a sale, but merely to impart to it the characteristics of a bailment of fungibles. Bonds, of course, are not fungibles, but there is no difference between one bearer bond and another, where both are of the same issue, denomination, and value; and the effect of the provision in question was to impart to the bailment of the bonds

the advantage of a bailment of fungibles, i. e., the right of the bailee to return similar articles without the burden of keeping separate and returning the identical articles bailed. There is no more reason why the rights of the bailor should be ignored under such a contract than in the ordinary case of the bailment of fungibles such as grain, where it is contemplated, not that the identical grain shall be returned, but merely grain of the same grade. In Interstate Banking & Trust Co. v. Brown (C. C. A. 6th) 235 F. 32, 40, Judge Denison says that "goods may be of one of three classes: Inherently fungible, or capable of acquiring that quality by agreement, or quite incapable thereof." Bonds of the same issue, denomination, and value, all payable to bearer, are so nearly alike that there is no reason why they may not by agreement of parties be given the quality of fungible goods, i. e., the right of substitution, without destroying the rights of a bailor with respect to such goods and converting what was intended to be a bailment into a sale.

The exact question here involved was before the Appellate Court of Indiana, sitting in banc, in Stults v. Gordon, 89 Ind. App. 611, 167 N. E. 564, 566, and the court held that the deposit of the bonds was a special deposit and that the relationship between the parties was that of bailor and bailee and not debtor and creditor. The court said:

"The bonds were left with the bank pursuant to an agreement to return bonds of the same issue and amount after 60 days' notice. It may be implied that the bank had the right to use the bonds to augment its assets. If such had not been the intention of the parties, there would have been no necessity for any notice before the owner was entitled to have his bonds returned to him. The bonds were not left with the bank as a deposit to be drawn by Gordon at his will. Like bonds were to be returned to him upon the surrender of the receipt after 60 days' notice. All obligations of the bank to Gordon would have been fully satisfied if the same bonds or bonds of the same issue had been returned to him. This constituted the bonds a special deposit. The relation of debtor and creditor did not exist. The true relation between the parties was that of bailor and bailee. Tyler County State Bank v. Shivers (Tex. Civ. App.) 281 S. W. 264."

"All deposits made with bankers," says Mr. Justice Miller, "may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand." Marine Bank v. Fulton County Bank, 2 Wall. 252, 256, 17 L. Ed. 785. The deposit of the bonds here was certainly not of the latter class. It resulted in no account set up on the books of the bank against which checks might be drawn by plaintiff. If plaintiff had demanded the payment of any sum of money on account of the deposit, it is clear that the bank would have been justified in refusing payment and tendering the return of the bonds. And, on the other hand, if the bank had tendered the value of the bonds at the time of the deposit, it is clear that plaintiff would have been justified in refusing the tender and demanding the return of the bonds or like bonds of the same issue, denomination, and value. The deposit of the bonds was, thus, clearly a special deposit creating a bailment; and the fact that there was a power on the part of the bailee to use the bailed property and to return in lieu thereof like property of equal value did not, under the circumstances of the case, convert the bailment into a sale.

And we do not think that the rights of the plaintiff were in anywise impaired by reason of the fact that the bonds were pledged by the bank to secure the postal savings account and that the bonds returned to the receiver by the pledgee are not shown to be the identical bonds which plaintiff deposited. There is no question but that the bonds of plaintiff and other customers were pledged to secure the postal savings account and that, when the liability of the bank on this account was discharged by the sale of the bank's bonds, bonds in the exact amount of the customers' bonds and of the same denomination and issue were returned to the bank's receiver. The fact that plaintiff's bonds had been mingled with those of other customers so that it was impossible to identify them in the lot in the hands of the receiver was no more reason for refusing to grant relief than if coins belonging to plaintiff had been mingled with coins of like character in a bag. In

such case equity will follow the bonds into the hands of the receiver and will direct that bonds which he has of the same issue, denomination, and value be set apart to plaintiff, just as it would follow money into a bag or other indistinguishable mass "by taking out the same quantity." Knatchbull v. Hallett, 13 Ch. Div. 696; Central National Bank v. Connecticut Mutual Life Ins. Co., 104 U. S. 54, 69, 26 L. Ed. 693; First National Bank of Ventura v. Williams (D. C.) 15 F.(2d) 585, 587; Quin v. Earle (C. C.) 95 F. 728, 731. Plaintiff's bonds have unquestionably been traced into the fund which came into the hands of the receiver upon the release of securities pledged for the postal savings account; and, even if the form of investment had been changed, there would be no trouble in charging the fund with liability for the bonds traced into it. Schumacher v. Harriett (C. C. A. 4th) 52 F.(2d) 817, 82 A. L. R. 1; Tucker v. Newcomb (C. C. A. 4th) 67 F.(2d) 177; Dudley v. Richards (C. C. A. 8th) 18 F.(2d) 876; First National Bank of Ventura v. Williams, supra; Gwynn v. Spurway (D. C.) 28 F.(2d) 37; Stults v. Gordon, supra; Everett v. Staton, 192 N. C. 221, 134 S. E. 490; Andrew v. Citizens' State Bank, supra, 203 Iowa, 345, 212 N. W. 745, 51 A. L. R. 906.

For the reasons stated, we think that the decree appealed from was correct and same will accordingly be affirmed.

Affirmed.

NORTHCOTT, Circuit Judge (dissenting).

I am of the opinion that the clause in the agreement under which the bonds were deposited, giving the bank the privilege of using the bonds as their own property, created the relationship of debtor and creditor. This was certainly the situation when the bank exercised the option given and used the bonds as their own property.

It is admitted that there can be little doubt that if the bonds had been required to make the postal savings account good, the plaintiff would have had merely a nonpreferential claim for their value. The bank's title to the bonds was, therefore, good. There is no evidence that the identical bonds deposited by the plaintiff are in the possession of the receiver.

The judgment of the court below should be reversed.