688

## GARNETT et al. v. ALMOURS SECURI-TIES, Inc.

### No. 8157.

Circuit Court of Appeals, Fifth Circuit.

Aug. 2, 1937.

K. I. McKay, of Tampa, Fla., for appellant.

George M. Powell, of Jacksonville, Fla., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

This suit was filed by M. E. Murray, receiver of the First National Bank of Panama City, herein referred to as the bank, against Almours Securities, Inc., herein referred to as defendant, to recover the value of certain bonds delivered by the bank to defendant before the receivership. Murray was succeeded as receiver by Roy E. Garnett, appellant, herein referred to as plaintiff, who was substituted as a party. Defendant filed pleas to the complaint. Demurrers to the pleas were overruled, and plaintiff then filed replications to the pleas, to which demurrers were sustained. Plaintiff declining to plead further, judgment was entered in favor of defendant dismissing the suit. Error is assigned to these rulings.

The complaint is in three counts. In substance, the material allegations of the first count are these. On September 3, 1930, while the bank was insolvent, it transferred to defendant, an unsecured creditor, certain Road and Bridge District bonds of the county of Dade, Florida, payable to bearer, of the value of $100,000, of which the bank was the lawful holder, without the payment of any present consideration, and not in payment of circulating notes of the bank, with a view to the preference of said defendant over the other creditors of the bank; that defendant converted the bonds to its own use and did not return any part of them or pay the value thereof to the bank or the receiver; that demand had been made and refused. The second and third counts differ only in alleging that the transfer of the bonds was made after the commission of an act of insolvency by the bank, without stating any facts as to this, and in contemplation of insolvency. The complaint does not allege knowledge of insolvency by defendant at the time the bonds were returned.

The pleas may be considered together. They set up the following defense: Defendant was the owner of the bonds and on July 23, 1930, entered into a written agreement with the bank by which the bonds were loaned to it and were deposited with the Treasurer of the State of Florida as collateral security, to guarantee state and county deposits of money. The agreement provided that the bank would pay interest on the loan at the rate of 6 per cent., with the option to use the coupons attached to the bonds for that purpose, and that upon ten days' written notice the bank would deliver to defendant collateral security for the loan, acceptable to defendant, in an amount of $225,000 par value; that during the month of September, 1930, defendant gave notice to the bank to comply with the terms of the agreement and to deliver securities of

the par value of $225,000; that the bank elected to cancel and rescind the agreement and returned the bonds loaned; that the consideration was the cancellation and rescission of the agreement and the relinquishment of all rights of defendant thereunder; that the transfer was not made while the bank was insolvent or after the commission of any act of insolvency nor in contemplation of any insolvency; that it was not with a view of preference of defendant over other creditors of the bank. A copy of the agreement was annexed to and made a part of the pleas. This shows that it was executed for the bank by A. A. Payne, its president, and also bore the signature of Jos. H. Riggs, its cashier.

The replications to the pleas contained the following allegations: On March 20, 1930, defendant was the owner of record of 551 shares of the capital stock of the bank and on that day was informed that the bank was in an embarrassed financial condition and was insolvent; that defendant, in an attempt to evade any stockholder's statutory liability for assessment, organized a Florida corporation, under the name of the First Commercial Corporation, and transferred to it the 551 shares of the capital stock of the bank; that said holding company, by virtue of the transfer of defendant's stock and other stock, held the majority of the voting stock of the bank and defendant held the majority of the voting stock of the holding company; that by virtue of this stock ownership Joseph H. Riggs and F. C. Schwalbe, stockholders in the holding company, were elected as officers and directors of the bank; that the bank did not have sufficient collateral on deposit to secure the state deposits it held and was in such an embarrassed financial condition that it could not procure it; that defendant knowing the bank to be insolvent, in order to make it appear to the depositors of the bank and other persons interested, and in order to prevent the withdrawal of the state deposits, loaned the bonds to the bank to be used as security for the state deposits; that by virtue of the loan, title of the bonds became vested in the bank and defendant became a general creditor of the bank; that defendant caused the loan agreement to be signed by its agent, Riggs, who was vice president of the bank, and the agreement was made by collusion between defendant and its agent, Riggs, with intent to secure a preference over other creditors; that by reason of the fraud upon the other creditors the agreement was null and void as to them and to the receiver; that therefore defendant was not entitled to enforce the terms of the agreement in regard to the return of other collateral in lieu of said bonds, and to demand a return of the said bonds; and that any alleged rescission and cancellation of the agreement was fraudulent and void and constitutes no defense to the conversion of the bonds as averred in the declaration.

Plaintiff concedes that if the rulings on the pleadings were right the entry of the judgment was proper, under the authority of Clearwater v. Meredith, 1 Wall. 25, 17 L.Ed. 604, but insists upon the errors assigned to the sustaining of the demurrers to the replications and the overruling of the demurrers to the pleas.

One ground of the demurrers to the replications was a departure in pleading. The replications admit the execution of the agreement set up by the pleas but seek to have it held for nought, on the ground of fraud and collusion. Clearly, this was a departure from the allegations of the complaint and an attempt to plead a new and different cause of action, more properly cognizable in equity than at law. We consider the demurrers to the pleas were properly overruled. Crim v. Drake, 86 Fla. 470, 98 So. 349.

Plaintiff relies upon a ground of the demurrers to the pleas that they did not constitute a defense. In support of this it is contended that the loan of the bonds vested full title in the bank and the relation of debtor and creditor was established between plaintiff and defendant. Plaintiff relies principally upon the case of Ashley v. Rowe, 101 Fla. 110, 133 So. 551. In that case it appears suit was brought against the receiver of a bank to recover bonds alleged to have been loaned to the bank to be used as security to guarantee deposits of state funds but there the similarity with this case stops. It further appears that the complainant had filed a claim as a creditor with the receiver, had accepted a certificate of indebtedness showing her to be a creditor on an open account, on a savings account, and for the value of the bonds, and that she had received dividends of 30 per cent. of the total amount. It does not appear that the bonds were loaned under a special agreement such as is relied upon by defendant. While it was held that the bonds became the property of the bank and the relation

of debtor and creditor was established, the judgment in favor of the receiver was also put upon the ground of estoppel. We do not consider this case controlling.

Plaintiff also relies upon the case of Kohler v. Spurway (D.C.) 28 F.(2d) 36. In that case bonds were deposited with a bank to be returned on order of the depositor and surrender of the receipt given for them. The receipt contained this provision: "It is understood that the bank may treat these bonds as its own property, remaining liable to return equivalent bonds as herein provided." There was judgment in favor of the receiver, but in another case arising in the same receivership, Gwynn v. Spurway (D.C.) 28 F.(2d) 37, the bonds were deposited with the bank and a similar receipt was given except that it omitted the provision above quoted. The same judge decided the case in favor of the owner of the bonds, contrary to the decision in the Kohler Case.

The Kohler Case is not in point. Other authorities cited by appellant are also not in point and require no discussion.

It is apparent the complaint was drafted to state a cause of action under the provisions of section 52 of the National Banking Act of 1864 (Rev.St. § 5242, 12 U.S.C.A. § 91). In McDonald v. Chemical National Bank, 174 U.S. 610, 19 S.Ct. 787, 43 L.Ed. 1106, it was held that, though a national bank was insolvent, if it was open for business, a transaction in the usual course of business by which a creditor obtains funds of the bank would not necessarily create a preference voidable under the statute. See, also, Nelson v. Lewis (C.C.A.) 73 F. (2d) 521.

In Marchant v. Summers (C.C.A.) 79 F.(2d) 877, 878, the facts were somewhat similar to the case at bar. Four Liberty bonds were deposited in a bank for safekeeping under an agreement which required the bank to collect the interest thereon and deposited it to plaintiff's account. The agreement contained this provision: "This bank reserves the privilege of using the bonds * * * in such a manner and for such purposes as it may choose and requires five (5) days notice when the return of the * * * bonds is desired—not necessarily the identical bonds, but bonds of the same issue, same denomination and value."

It was held that the relationship established was that of bailor and bailee, not that of debtor and creditor, and that the owner of the bonds was entitled to recover them or their value from the receiver.

The decision in Brown v. Schleier, 194 U.S. 18, 24 S.Ct. 558, 48 L.Ed. 857, is also in point. There a national bank erected a building on leased property, the lease securing the landlord by a lien on the building and the personal obligation of the bank. A large amount of rent and taxes was unpaid and the bank became insolvent. The bank conveyed the property, with the building, back to the landlord, in consideration of his releasing the bank and the stockholders from all liabilities accrued and to accrue under the lease. A judgment dismissing on demurrer a bill to set aside the transaction was affirmed.

We consider the pleadings do not show that the receiver was entitled to recover the bonds or their value. Under the terms of the agreement title to the bonds remained in defendant and the relationship of debtor and creditor was not established. At the time they were delivered the bank was a going concern, the receiver had not been appointed, and the transaction was in the usual course of business.

Other rulings to which error is assigned do not affect the substantial rights of the parties and may be disregarded.

The record presents no reversible error.

Affirmed.